## Case No. 16,826.

### VAN ANTWERP v. HULBURD et al.

[7 Blatchf. 426; 1 Thomp. Nat. Bankr. Cas. 208.]

Circuit Court, N. D. New York. June, 1870.

FEDERAL COURTS—EQUITY JURISDICTION—INTER-FERENCE WITH GOVERNMENT OFFICERS—SUBMISSION TO JURISDICTION.

1. This court has no jurisdiction to entertain a suit in equity, brought by a private person, to interfere with or control the administration of the duties of the comptroller of the currency and of the treasurer of the United States, in respect to bonds deposited with the treasurer, to secure the redemption of the circulating notes of a national bank, under the act of June 3, 1864 (13 Stat. 99). Per Woodruff, Circuit Judge.

2. No such jurisdiction is conferred by that act. Per Woodruff, Circuit Judge.

3. The provisions of the 56th and 57th sections of that act, explained. Per Woodruff, Circuit Judge.

4. A plea to the jurisdiction of this court, alleging facts which show a want of the jurisdiction, is not a submission to the jurisdiction. Per Woodruff, Circuit Judge.

[Cited in Thayer v. Wales, Case No. 13,872; Romaine v. Union Ins. Co., 28 Fed. 636; Bland v. Fleeman, 29 Fed. 672.]

In equity. The defendants in this suit were Hiland R. Hulburd, comptroller of the currency of the United States, Francis E. Spinner, treasurer of the United States, and Lewis Kingsley, receiver of the National Bank of Unadilla. The suit was brought to compel the comptroller of the currency and the treasurer to discover what disposition had been made of the bonds of the United States, to the amount of $111,200, which the National Bank of Unadilla had, prior to the 8th of June, 1867, deposited with the said treasurer for the purpose of procuring circulating notes, in pursuance of the act of congress, entitled "An act to provide a national currency, secured by a pledge of United States bonds, and to provide for the circulation and redemption thereof," approved June 3, 1864 (13 Stat. 99), and the acts amendatory thereof, and how many of such bonds had been sold, and the time and times when so sold, and where, and the amounts realized therefrom, and the disposition made of the proceeds, and how many of said bonds, if any, remained unsold, and how many of said circulating notes had been redeemed, and how many were still outstanding, and what had been done with respect to the interest accruing upon said bonds on the 1st of November, 1867, on the 1st of May, 1868, and on the 1st of November, 1868, and how much of the proceeds of the said bonds and interest still remained in the treasury of the United States, and what disposition the said defendants intended to make of any surplus bonds and the interest thereon, or the surplus proceeds thereof, after the redemption of all the circulating notes

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

of the said bank, or adequate provision had been made therefor. The bill further sought a decree, adjudging, that neither the comptroller nor the treasurer of the United States had any further official duty or authority, in respect to the said bonds and the interest thereon, than to apply or employ them, or the proceeds thereof, to the redemption of the circulating notes of the said bank, and that they, nor either of them, had any legal right or authority to retain any surplus bonds or proceeds, after the said circulating notes were redeemed, or their redemption provided for, in the legal currency of the United States, or to do otherwise than to pay the same over to the plaintiff [John H. Van Antwerp], as the assignee of all of the interest of the said bank therein; and further adjudging, that the plaintiff, as such assignee, upon depositing in the treasury of the United States, in legal currency, a sum which, with what was now there deposited as the proceeds of bonds sold and interest collected, would be sufficient to redeem, at par, all the circulating notes of the said bank, would be entitled to receive from the said comptroller or the said treasurer all of the bonds remaining unsold, or, if all had been sold, then that he would be entitled to any surplus arising from the proceeds of sale, and interest accrued, after the redemption of all of the said circulating notes, or adequate provision had been made therefor; and, that the said comptroller, or the treasurer of the United States, might be decreed to deliver the said surplus bonds and interest to the plaintiff. No discovery was sought from the defendant Kingsley; but it was further prayed, that it might be decreed that Hulburd, as comptroller of the currency, had no legal right or authority to appoint a receiver of the said bank, or of any of its assets or property, and that the pretended appointment of the defendant Kingsley, as such receiver, was null and void. The bill also sought an injunction, restraining the defendant Hulburd, as comptroller of the currency, and the defendant Spinner, as treasurer of the United States, from disposing of any of said bonds, or the proceeds thereof, or interest thereon, remaining after the said circulating notes had been redeemed, or their redemption provided for, in any other manner than to deliver or pay the same to the plaintiff, as his property, by virtue of the assignment to him by the said bank, and restraining Kingsley, as such receiver, from receiving, or in any way interfering with, any of said bonds or the proceeds thereof.

The material facts upon which the discovery and relief were sought were, that the said bank received from the comptroller of the currency circulating notes, to the amount of $100,000; that the plaintiff loaned to the bank $60,000 of the said $111,200 of bonds of the United States, to enable the bank to receive the said amount of circulating notes; that, on or about the 8th of June, 1867, the

said bank, by vote of two-thirds of its capital stock, determined to go into liquidation, as a national bank, and duly notified the comptroller of the currency, of such determination, and notices thereof were, at or about that date, published, pursuant to the said act of congress, and all lawful proceedings were taken to put its affairs into liquidation; that, from that time, it ceased to exist or transact business as a national bank; that, since that time, it had done all things required by the said act to be done, to enable it to go into liquidation, as a national bank, and close its affairs, as such; that, on the 8th of June, 1867, the said bank, in consideration of the aforesaid loan, to secure the return of the bonds to the plaintiff, and to secure the redemption of its circulating notes at the New York State National Bank at Albany, (its legally appointed agency,) and in consideration of $3,000, in due form of law assigned to the plaintiff all its right, title and interest in the bonds so deposited with the defendant Spinner, as treasurer of the United States; that the plaintiff thereupon assumed the obligation to redeem all of the said circulating notes, which obligation he had, ever since, been ready to perform, upon the receipt of the said bonds, and was still ready to perform and discharge, so far as he could be permitted so to do, or as was practicable, by reason of the official action of the comptroller of the currency and of the treasurer of the United States, afterwards alleged in the bill; that notice of such assignment was given to the said Hulburd and Spinner, and the plaintiff offered to the said Hulburd to redeem all of the said circulating notes, upon receiving said bonds, or, that if the said Hulburd, as comptroller of the currency, would hand over to the plaintiff the said bonds, the plaintiff would pay over to the treasurer of the United States, or to the proper department of the government, in the legal tender notes of the United States, an amount equal to the then outstanding circulating notes of the said bank, to wit, $100,000; that the said Hulburd refused to deliver to plaintiff the said bonds on his making such deposit, or to recognize the plaintiff's right to the said bonds, in any form or under any circumstances whatever, and had continued to act in disregard and in defiance of such right; that the said circulating notes had, so far as presented, been redeemed at the said New York State National Bank, by or for the plaintiff; that, four days after the said bank had determined to go into liquidation, and on the 12th of June, 1867, it being then in process of liquidation, it was organized as a state bank, and continued to exist and do business as a state bank, until its assets and property were taken by the defendant Kingsley, claiming to have been appointed receiver of the said National Bank of Unadilla, by the defendant Hulburd, as comptroller of the currency; that, in August, 1867, the defendant Hulburd, as

such comptroller, assumed to appoint the defendant Kingsley such receiver; that Kingsley accepted the appointment, and in that capacity had taken possession of all the assets and property, in any way or form, pertaining to the said bank, both as a national and state bank, and claimed, in his capacity as such receiver, an interest, adverse to the plaintiff, in the said bonds, so deposited with the treasurer of the United States, and assigned to the plaintiff; that, when the said receiver was appointed, neither the said National Bank of Unadilla, nor its agent for redemption, had refused or neglected to redeem any of its circulating notes according to law, and no act had been done or omitted which authorized the comptroller to appoint a receiver for the purpose of winding up its affairs; that Hulburd, as comptroller, and Spinner, as treasurer, had no interest in, or official duty to perform in respect to, the said bonds and interest and the proceeds thereof, except to apply so much as should be necessary to the redemption of the said circulating notes, and to deliver and pay the balance, which the plaintiff averred to be his property, to him; that the said bonds were of greater amount, at their par value, than such circulating notes, by $11,200, and interest to the amount of $3,336 in gold had accrued thereon, on the 1st of November, 1867, and other interest had accrued thereon May 1st, 1868, and November 1st, 1868, and they had, during all the times aforesaid, a market value of eight per cent. above their par value; that the plaintiff, on the 8th of August, 1867, offered to the said Spinner the taxes payable on the said circulating notes, conditioned upon the delivery of the bonds to the plaintiff, on his depositing legal tender notes, equal in amount to the said circulating notes then outstanding, and that he was still willing and thereby offered to pay such taxes on that condition; that, after notice of the plaintiff's rights, and after the offer to pay into the treasury of the United States $100,000 in legal tender notes, for the redemption of such circulating notes, the said Hulburd, as comptroller of the currency, gave public notice that he would redeem such circulating notes at the treasury department in the city of Washington, and had sold, at various times, the bonds aforesaid, to the amount of from $70,000 to $80,000, at a premium of about six per cent., and the proceeds had been paid into the treasury of the United States, subject to his direction and control, for the redemption of such circulating notes, and some of such notes had been redeemed; that the said Hulburd, as comptroller of the currency, refused to recognize the rights of the plaintiff, and intended to retain the remaining bonds, or sell them, and, after the redemption of all the said circulating notes, pay any surplus to the general creditors of the said National Bank of Unadilla, or to the defendant Kingsley, as the pretended receiver thereof; that,

in September, 1868, the plaintiff again offered to redeem the said circulating notes, in pursuance of his agreement to do so, but the said Hulburd declined to recognize the plaintiff's rights or obligations, and intended himself to redeem such notes with the said bonds or their proceeds, and to dispose of the surplus (over $20,000) in defiance and disregard of the rights of the plaintiff. The comptroller of the currency and the treasurer of the United States interposed a plea to the jurisdiction of the court over them, or either of them, averring that they were, at the time of the service of the writ of subpœna in the suit, inhabitants of the city of Washington, in the District of Columbia, and not within the jurisdiction of this court, and that such writ of subpœna was served upon them at such city of Washington.

John H. Reynolds, for plaintiff.
William Dorsheimer, Dist. Atty., and Edwin W. Stoughton, for defendants.

Before WOODRUFF, Circuit Judge, and HALL, District Judge.

WOODRUFF, Circuit Judge. The discovery and relief sought by the bill of complaint include an inquiry into, and a direct interference with, the administration of the duties of the comptroller of the currency, and of the treasurer of the United States, in respect of bonds deposited with such treasurer, under the act of June 3d, 1864, to provide a national currency (13 Stat. 99), to secure the redemption of the circulating notes of a national bank. The bill assumes that this court has jurisdiction and authority to call those officers of the government to account for their official acts; to require them to state what, in their official capacity, they intend further to do; to restrain them by injunction from doing what is unjust or inequitable towards the plaintiff; and, by decree, to compel them to exercise their functions, in respect to such bonds, according to the law, as interpreted by the court, and to render justice and equity to the plaintiff.

The action is not brought against them as individuals, to restrain or redress a wrong, which, as private persons, they are doing or threaten to do, to the private rights of the plaintiff; and, if it were, their residence at Washington would forbid any attempt to give this court jurisdiction, by the service of process of subpœna, unless they should be found and served within this district. The act of congress relating to both the circuit and district courts is quite explicit, that no civil suit shall be brought before either of said courts, against an inhabitant of the United States, by any original process, in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ. Act Sept. 24, 1789, § 11 (1 Stat. 78, 79).

It is not claimed that this court has, by virtue of the statutes creating the court, any jurisdiction of the officers of the executive departments at Washington, to review or control their official acts, or to prescribe rules for the administration of their offices, on allegations that, in such administration, they have violated, or are about to violate, the private rights of an individual, even though such public officers should be found in this district and be here served with process. I say nothing of private wrongs, committed without color of official authority, or even with such color, if outside of the jurisdiction of such officers; but it would be a most extraordinary claim, that the secretary of state of the United States, or the treasurer of the United States, is liable to be sued in any district or districts of the United States where he may at any time, or from time to time, be found, by any individual who conceives himself aggrieved by his official acts, or who alleges a title to be paid moneys which have been paid into the treasury of the United States, or to receive other property held by the last-named officer, as such treasurer. The power of the circuit court in the District of Columbia, and, incidentally, the question whether the circuit courts of the United States, severally, had power to issue writs of mandamus to compel an officer of the United States to perform a ministerial act, were fully discussed in Kendall v. U. S., 12 Pet. [37 U. S.] 524, and the cases there cited affirm, that even that power has not been conferred on the circuit courts within the states. See Marbury v. Madison, 1 Cranch [5 U. S.] 127; McIntire v. Wood, 7 Cranch [11 U. S.] 504; M'Clung v. Silliman, 6 Wheat. [19 U. S.] 598; Reeside v. Walker, 11 How. [52 U. S.] 272; U. S. v. Guthrie, 17 How. [58 U. S.] 284; U. S. v. Commissioner, 5 Wall. [72 U. S.] 563.

The present suit proceeds in this court as a court of equity, against the defendant Hulburd, as comptroller of the currency, and against the defendant Spinner, as treasurer of the United States. It arraigns their acts in that capacity, and seeks to control their official acts in the future. It being conceded that they are inhabitants of the city of Washington, and the statute plainly forbidding that a civil suit should be brought against them in this district by the service upon them in Washington of a subpœna to answer, the jurisdiction of this court over them is claimed to be conferred, and, as an incident, the right to summon them to appear here, by the special provisions of the act to provide a national currency, before referred to, and the acts amending the same.

Deferring, for the present, the inquiry whether the proper mode of raising the question is by the plea which has been interposed on behalf of the comptroller of the currency and the treasurer, I deem it proper to examine, first, the claim that the act, called, for convenience, the national currency act, confers the power and jurisdiction contended for.

The sections of the act which are relied upon as conferring jurisdiction are the fifty-sixth and fifty-seventh.

The fifty-sixth section provides, that all suits and proceedings arising out of the provisions of the act, in which the United States, or its officers or agents, shall be parties, shall be conducted by the district attorneys of the several districts, under the direction and supervision of the solicitor of the treasury. Obviously, this section neither expressly, nor by implication, affects the jurisdiction of any court. It assumes, it is true, that suits may be brought and proceedings instituted which have their foundation in the provisions of the act, and that the United States, or its officers or agents, may be parties to such suits, and declares, and only declares, that such suits and proceedings shall be conducted by the district attorney. If this section is not solely applicable to actions and proceedings instituted by or in the name of the United States, or its officers or agents, and may, by a liberal construction, be held to impose upon the district attorney the duty of conducting the defence. of suits and proceedings to which third parties may see fit to make the United States, or its officers or agents, parties defendant, still, this language cannot be held to authorize the institution of such suits, or to give jurisdiction to a court not having, independently of this section, authority to entertain them. The most obvious meaning, intent and effect of this section are, to impose upon the district attorneys the duty of conducting suits and proceedings which may be necessary to carry into full effect the provisions of the act, whether such suits are brought in the name of the United States or of the comptroller of the currency, or in the name of, or by, the receiver of a banking association, and in whatever court such suits may be prosecuted. In general, the language employed, that such suits and proceedings "shall be conducted," imports prosecution, either civil or criminal, and not defence; and, in the other provisions of the act, there are numerous cases contemplated, to which such use of the language applies. But, as already, in substance, said, this section, whether it is confined to the prosecution, or includes also the defence, in nowise purports to indicate when, where, or for what purpose such suits or proceedings may be instituted, or to give them any legality or efficiency. Such legality and efficiency must be determined by other provisions of law. This section can no more be said to enlarge the jurisdiction of the circuit court of the United States, either as to person or subject matter, than it can to confer upon a state court a jurisdiction not possessed before the enactment.

How far is the plaintiff's position aided by the fifty-seventh section? That section enacts, that suits, actions, and proceedings against any association under the act, may be had in any circuit, district or territorial court of the United States held within the district in which such association may be established, or in any state, county or municipal court in the county or city in which said association is located, having jurisdiction in similar cases. It is not, and plainly it cannot be, claimed, that this affirmative enactment has any application to a suit against the comptroller of the currency or the treasurer of the United States. Its terms are explicit, and the only suits, actions, or proceedings mentioned, are those against an association.

But there is a proviso to the fifty-seventh section, which, it is claimed, warrants the present suit. That proviso is in these terms: "Provided, however, that all proceedings to enjoin the comptroller under this act, shall be had in a circuit, district, or territorial court of the United States, held in the district in which the association is located." It is argued that, because the present suit is brought to obtain an injunction, and appertains to the alleged rights of the plaintiff to bonds deposited in pursuance of the act, therefore, this proviso declares that this suit shall be brought in this or some other federal court, and, by necessary implication, gives this court jurisdiction to summon the comptroller, if not also the treasurer of the United States, to appear therein and answer. This is a violent construction, I think, to the language of a proviso which is in the form of limitation, not of affirmative authorization, and has, I think, no such meaning.

What are the proceedings which may be had to enjoin the comptroller "under this act?" No section provides for or refers to such a suit as the present. The eighth section declares, that the association itself shall have power to sue and may be sued, complain and defend in any court of law and equity, as fully as natural persons. Under this section, if the association should prosecute a suit of any nature against any defendants whomsoever in any court, all the conditions of jurisdiction over the person of the defendant, and of the subject matter, must be satisfied. The forty-sixth section relieves the association from the consequences of a refusal to redeem circulating notes, and of the protest of such notes, when the payment of such notes has been restrained by order of a "court of competent jurisdiction." This, of course, declares nothing in respect to the nature or extent of the jurisdiction of any court. So, of that part of section fifty which makes the adjudication of a court of competent jurisdiction competent proof of claims against an association; and, also, of section fifty-eight, which authorizes the recovery by the association of the penalty for mutilating its bills; and, also, of the sections which declare counterfeiting the bills, or engraving plates for forging, a felony, or punishable by fine or imprisonment. Section fifty-three gives the circuit, district and territorial courts of the United States jurisdiction of a suit brought by the comptroller of the currency to obtain a

judgment declaring a forfeiture of the franchises, &c., of an association, for a violation of the provisions of the act.

Section fifty, however, provides a case in which the comptroller of the currency may be enjoined, and prescribes the mode in which he may be called upon to show cause why he should not be enjoined. By that section, the comptroller, on becoming satisfied that any association has refused to pay its circulating notes, and is in default, is authorized to appoint a receiver to take possession of the books, records and property of the association, collect the debts, &c., of the association, and sell its real and personal estate, and pay over all money made or realized, to the treasurer of the United States, subject to the order of the comptroller of the currency. But the proviso to the section declares, that, if such association shall deny its default, it may apply to the nearest circuit, district, or territorial court of the United States, to enjoin further proceedings, and that such court, after citing the comptroller of the currency to show cause why further proceedings should not be enjoined, and after a decision or finding that such association is not in such default, shall make an order enjoining such comptroller, and any receiver he may have appointed. This proviso contemplates a proceeding (not necessarily a formal suit or action, but a proceeding summary in form) instituted by the association, to continue its own existence, preserve its property, and avoid an ex parte receivership, ordered by the comptroller to have effect and operate upon the association and its property in the very place where it is located. Such receiver might be appointed upon erroneous information or mistaken evidence, and considerations of convenience required that the association should have speedy and convenient means within its own district, and where the proofs must necessarily be, of rectifying a mistake and disproving the allegations upon which such ex parte action of the comptroller had proceeded. The proviso to the 57th section had one further object, which, I have no doubt, was its chief purpose, namely, to exclude any possible attempt to procure an injunction in any state court, to restrain the comptroller in the discharge of his duty to appoint a receiver to close up the affairs of a bank that had become insolvent or failed to comply with the provisions of the act. It was intended that, in that matter, state courts should have no jurisdiction.

I find no other circumstances in which proceedings to enjoin the comptroller under the act, are authorized by it. It is unnecessary, for the purposes of this case, to say, and I do not say, that no case can arise in any court in which, under the general principles of law and equity, the legality and effect of the acts of the comptroller of the currency, or of the treasurer of the United States, may not be subjected to adjudication, nor that no case can exist in any court in which an injunction to stay the action of either of them may be obtained. What I mean to say is, that such a case is not provided for in the act in question, save as above stated and commented upon; and the court must seek its jurisdictional power over the subject matter, and over the persons of the defendants, in some source other than the act referred to.

The conclusion necessarily follows, that the plaintiff is not, by the act of congress relied upon, warranted in prosecuting an action in this court, as assignee of the bonds deposited with the treasurer of the United States pursuant to the provisions of that act, to call such treasurer and the comptroller of the currency to an account for their acts in their official character in relation thereto, and that this court has no jurisdiction to summon them, by writ of subpœna, to answer to the present bill of complaint.

It is, however, insisted, that the comptroller and treasurer have, by their plea, submitted to the jurisdiction, and that their plea to the jurisdiction should, therefore, be overruled. If the only ground of objection to the jurisdiction of the court were the service of the subpœna out of the district, the consideration of the plaintiff's claim in this respect would be material. It is a familiar rule, often recognized in the federal courts, that a party may waive his privilege, if he be relieved from liability to be sued in a particular court, and he may even waive the service of any process; and, by pleading or answering to the merits, he does submit to the jurisdiction. This, however, assumes that the court has jurisdiction of the controversy between the parties. But it is equally clear, that exemption from liability to be sued in a particular court, and the objection that the process of the court is served out of the jurisdiction, are the proper subjects of a plea in abatement. I think the court might, in the present case, have granted a motion to set aside the proceeding as to the comptroller and treasurer on that sole ground; but the defendants were not bound to abide the result of a mere motion. It was a matter which could be made to appear of record, and in a form which would make it subject to review. Such pleas at law and in equity are warranted on common law grounds, and in courts of general jurisdiction, as in England; and the treatises and dicta cited to us do not deny this, but establish the contrary. Much more clearly is this true in a court whose jurisdiction is derived from statutes, in which the jurisdiction of the subject matter and of persons, and the limitation of the modes of acquiring jurisdiction, are prescribed, and in terms prohibitory of any other. This will appear well recognized in decisions in the federal courts, some of which will be presently referred to.

I am, therefore, clear, that, independently of the broader question which I have above discussed, if this case is to be disposed of on the plea that the process herein was served

in the District of Columbia, and not in this jurisdiction, and upon defendants who were then inhabitants of that District, and not within this jurisdiction, the matter of the plea is sufficient to defeat the action. A party is not, by merely pleading to the jurisdiction, and alleging the facts which, if true, show want of jurisdiction, to be deemed to submit to the jurisdiction or waive its defect. So simple a proposition needs no authority. Every case, which countenances such a plea, affirms it. In Halsey v. Hurd [Case No. 5,966], it was held, that a plea in abatement for want of service of process was not a waiver of process; and that the plea might be abandoned, and a motion to quash the writ for defective service of process might be substituted.

If there be any embarrassment to a decision based solely upon the plea in this case, it arises not from the matter of the plea, or the fact that the objection is raised by plea, but from the form of the plea, or the manner in which the plea is interposed. The elementary rule on that subject found in text writers, enforced by the courts in England, and countenanced, to some extent, at least, in the practice of the federal courts, is, that pleas which are in abatement, and grounded upon personal privilege, or relief from liability to be sued in a particular court, must be put in in propria persona, and the appointment of an attorney, solicitor or agent, by whom the plea is put in, is, per se, an appearance, an admission that the court has jurisdiction, and a submission thereto. See Teese v. Phelps [Case No. 13,819]; Teasdale v. The Rambler [Id. 13,815]; plea in Dred Scott v. Sandford, 19 How. [60 U. S.] 393. The rule is, in a high degree, technical, and it is not necessary, in the view that I have taken of the whole case, to affirm or enforce it here.

It was stated on the argument, that the present plea was at the instance of the court, made a substitute for a motion to quash the proceeding or set aside the service of process on these defendants, in order that the matter might appear of record. My learned associate, before whom the motion was made, confirms this, and counsel insisted, on the argument, that they ought, if purely technical objections arise, to be at liberty to withdraw the plea and proceed upon their motion, without being prejudiced by having pleaded; and my associate, who is familiar with what occurred in regard to the motion, thinks that should be permitted. Upon what precise reason does not appear, but the defendant in Halsey v. Hurd, above cited, was permitted to abandon his plea and move to quash the writ for defective service. If, therefore, I were of opinion that the plea put in by the solicitor was, in its present form, to be deemed a submission to the jurisdiction, I should acquiesce in the views expressed by my associate on the argument. But, entertaining the opinion which I do, that we have

no jurisdiction between these parties to grant the relief sought, I deem it unnecessary to pursue the inquiry last above referred to any further. If I am right in my views, we cannot pronounce judgment between these parties upon the facts alleged in this bill of complaint; and, therefore, whether the particular plea before us is formal or informal whether the matter were before us on motion or otherwise, it is our duty to dismiss the bill as to these defendants.

The general principle, that waiver of the objection by the parties does not give jurisdiction of the cause or matter in controversy between them, would, probably, not be denied. But it has been acted upon so often in the federal courts, and in cases in which the subject of a plea to the jurisdiction in equity, as well as at law, is adverted to, that some may be profitably cited. In Capron v. Van Noorden, 2 Cranch [6 U. S.] 126, it was held, that, on writ of error, a plaintiff might assign for error the want of jurisdiction in the court in which he himself brought the suit, and so take advantage of his own error in not showing his title to sue in that court. In Jackson v. Ashton, 8 Pet. [33 U. S.] 148, in equity, the court directed the dismissal of the bill because it did not affirmatively appear that the circuit court had jurisdiction, though it did not appear negatively that it had not. This was done by the court of its own motion. The counsel were anxious to have the case heard and decided on the merits, but Chief Justice Marshall stated the opinion of the court to be that the bill must be dismissed. In Rhode Island v. Massachusetts, 12 Pet. [37 U. S.] 657, also in equity, the distinction above adverted to between cases in which a party may and must plead to the jurisdiction, is stated. It is there said: "Jurisdiction is the power to hear and determine the subject matter in controversy between parties to a suit; to adjudicate or exercise any judicial power over them. * * * An objection to jurisdiction on the ground of exemption from the process of the court in which the suit is brought, or the manner in which the defendant is brought into it, is waived by appearance and pleading to issue; but, when the objection goes to the powers of the court over the parties, or the subject matter, the defendant need not, for he cannot, give the plaintiff a better writ or bill." It is also there said, that the supreme court is one of limited powers and must be confined to cases and parties over which the constitution and laws have authorized it to act, and that any proceeding without the limits prescribed is coram non judice, and its action is a nullity; and, in that case, the distinction between the courts of England and the federal courts, in particulars important to this subject, is pointed out. See, also, Toland v. Sprague, 12 Pet. [37 U. S.] 300; Voorhees v. Bank of United States, 10 Pet. [35 U. S.] 449, 473, 474. In Smith v. Kernochen, 7 How. [48 U. S.] 198, the right and

duty to plead in abatement a personal privilege or want of jurisdiction of the person. is held. The power and duty of the court to recognize their want of jurisdiction, is concisely stated in Tyler v. Hand, 7 How. [48 U. S.] 573, citing Dockminique v. Davenant, 1 Salk. 220. If the matter or ground of objection to the jurisdiction be extrinsic, the defendant must plead it; if intrinsic, the court will act upon it on motion or notice it of themselves. In Cutler v. Rae, 7 How. [48 U. S.] 729, a libel in admiralty was prosecuted in the district court of Massachusetts, the proofs were taken, a hearing was had and a decree was rendered for the libellants, which was affirmed in the circuit court. Chief Justice Taney, in the supreme court, discusses the question of the jurisdiction of the district court. He says: "It is true the counsel for the appellant has waived all objection on that score;" but, "if the proceedings show a case which the district court was not authorized to try, it is the duty of this court to take notice of the want of jurisdiction, without waiting for an objection from either party;" and the decree was reversed on that distinct ground. In the case of Dred Scott v. Sandford, 19 How. [60 U. S.] 393, this subject is discussed by nearly all of the judges. There, a plea in abatement had been decided in favor of the plaintiff below, and it was insisted that he could not allege error in that decision. But it was held that the court could give no judgment for the plaintiff or for the defendant in a case in which it had not jurisdiction, no matter whether there were a plea in abatement or not. See pages 402, 456, 458, 472 to 474, and numerous cases cited. Judge Curtis (page 567) says: "The course of the court is, where no motion is made by either party, on its own motion to reverse such a judgment for want of jurisdiction, not only in cases where it is shown, negatively, by a plea to the jurisdiction, that jurisdiction does not exist, but even where it does not appear affirmatively that it does exist. It acts upon the principle that the judicial power of the United States must not be exerted in a case to which it does not extend, even if both parties desire to have it exerted." See Piquignot v. Pennsylvania R. Co., 16 How. [57 U. S.] 104. For the same principles, see, also, Striker v. Mott, 6 Wend. 465; Henry v. Cuyler, 17 Johns. 469, 471; Davis v. Packard, 6 Wend. 327; Jordan v. Dennis, 7 Metc. (Mass.) 590, in state courts.

If, therefore, I am right in my opinion that this court has no jurisdiction to hear and determine, between this plaintiff and the comptroller of the currency and the treasurer of the United States, the matters alleged in the bill of complaint, we can and must so hold, whether the particular plea put in by the defendants is good or not. The bill, as to those defendants, should be dismissed.

[For further proceedings, see Case No. 16,827.]