SALENTINE (UNITED STATES v.). See Case No. 16.213.

SALINE COUNTY (MERRIWETHER v.). See Case No. 9,485.

SALINE COUNTY (PEPPER v.). See Case No. 10,972.

---

## Case No. 12,251.

### SALISBURY v. SANDS.

[2 Dill. 270.] [1]

Circuit Court, D. Nebraska. 1871.

NEBRASKA ORGANIC ACT — TERRITORIAL COURT JURISDICTION—SERVICE ON NON RESIDENTS —VALIDITY OF DECREE.

1. Under the organic act, the legislative authority of the territory of Nebraska could provide, in suits relating to property in the territory, for personal service upon non residents outside of the territory, or for constructive service by publication. notwithstanding the provision in section 11 of the judiciary act [1 Stat. 78] requiring personal service in the district.

2. A decree of foreclosure rendered by the territorial court upon personal service outside of the territory and constructive service by publication is not void when collaterally attacked, although there may have been defects or irregularities in the proceedings for which the decree might have been reversed on appeal.

3. Legislation of the territory of Nebraska respecting mode of procedure in the territorial courts reviewed.

4. The territorial district courts possessed general original chancery jurisdiction, and a foreclosure decree therein, when collaterally attacked, is entitled to the usual presumption in favor of the jurisdiction of the court and the regularity of its proceedings.

The complainant, Mrs. Salisbury, made to the defendant, Sands, in 1858, a mortgage upon certain real property in Omaha, in the then territory of Nebraska. At that time Mrs. S: resided in Omaha, but subsequently removed to, and now resides in, St. Louis, in the state of Missouri; and this bill—filed in this court in 1870, as stated in Sands v. Smith [Case No. 12,305]—is to redeem the property from the mortgage. In 1861 the mortgage was foreclosed, or attempted to be, in the proper district court of the territory of Nebraska. The principal controversy between the parties is whether the right to redeem is barred by the foreclosure decree, which the bill charges to be void for want of jurisdiction in the court which rendered it. In respect to those proceedings the bill avers in substance, the following: That Sands brought his bill to foreclose on February 14, 1861, in the territorial district court,

and at the November term in that year obtained a decree of foreclosure. It is stated that this decree was void, because the complainant (Mrs. Salisbury) was not served with process, nor was there any publication of the suit as required by statute in case of non-residents, nor did she appear to the suit. She avers that she resided at the time in St. Louis, and distinctly states that she was not personally served. The affidavit of publication is alleged by the bill to be defective in that it did not show the cause of action to be of the kind in which service by publication was authorized, nor that complainant could not be served within the territory. It appears from the record of that suit that a subpœna in chancery was issued, February 14, 1861; that the sheriff authorized, by written indorsement thereon, one Rawle to serve it in St. Louis, and Rawle's affidavit, annexed to it, and his testimony taken in this suit, each shows that he served the same by reading it to the complainant in St. Louis, and delivering her a copy thereof on the 25th day of February, 1861, but it does not appear that she was served with a copy of the bill of complaint. The subpœna thus served in St. Louis was returned with affidavit of service annexed, and filed in the court, March 2, 1861. On the same day (March 2, 1861) the attorney for the plaintiff in the foreclosure suit filed an affidavit in the cause stating that the cause of action arose in the territory, and that the defendant therein (present plaintiff) was a non-resident thereof. The affidavit does not state, otherwise than by stating that the defendant was a non-resident, that service could not be made within the territory; nor does it state that the action was for the foreclosure of a mortgage, although the bill showed, as well as the published notice, that such was th nature of the suit. No order of publication, made by a judge or master, appears in the record of the foreclosure proceeding, but the record thereof contains a notice of publication, dated March 9, 1861, directed to the defendant in the suit (Mrs. Salisbury) stating that a bill of foreclosure was filed, the time when she must plead, and the object and prayer of the bill; and an affidavit of publication in the Nebraskian accompanies it, showing that it was published in that paper for five consecutive weeks from and after March 9, 1861. The order of court referring the cause to a master, passed October 16, 1861, recites that it appears "that there has been due service of process upon the defendant. Lydia A. Salisbury;" and on November 4, 1861, a decree of foreclosure pro confesso was entered in due form, on which the property mortgaged was soon afterwards sold to the mortgagee, the present defendant, who entered at once into the possession thereof.

J. M. Woolworth, for complainant.

Redick & Briggs and Henry R. Mygatt, for defendant.

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

Before DILLON, Circuit Judge, and DUN-DY, District Judge.

DILLON, Circuit Judge. It is insisted by the complainant that the decree of foreclosure is void because the service made out of the territory was in violation of section 11 of the judiciary act, which provides that "no civil suit shall be brought before either of said courts (i. e. circuit and district courts of the United States) in any other district than that of which he (the defendant) is an inhabitant or may be found at the time of serving the writ."

In my opinion, this restriction did not apply to the territorial courts of Nebraska; at all events, it did not limit the legislative power of the territory under the organic act, which was declared (section 24) "to extend to all rightful subjects of legislation consistent with the constitution of the United States and the provisions of this act." The organic act declared that the district courts of the territory should "possess chancery as well as common law jurisdiction," which jurisdiction "shall be as limited by law." Section 27. It was not competent for the territorial legislature to deprive the courts of chancery jurisdiction. Dunphy v. Kleinsmith, 11 Wall. [78 U. S.] 610. But it was competent for it to provide, notwithstanding section 11 of the judiciary act, that non-residents (in suits relating to property in the territory) might be served personally outside the territory or by publication in the manner practised in all the states.

On the 1st day of November, 1858, the territorial legislature adopted a Code of Civil Procedure for the territory. On the 4th day of November, 1858, it was specially enacted "the judges of the district courts shall establish rules to regulate remedies and proceedings in chancery." The Code expressly authorized summons in certain cases to be served out of the territory, and provided the mode. Code 1858, § 60.

In the rules in chancery adopted by the judges under the statute of November 4, 1858, they provided that a subpœna should be the first process in equity, and as to the mode of service and return adopted the provisions of the Code of Civil Procedure, and declared that it should include foreclosure suits.

The Civil Code provided (section 69) for service by publication in certain cases relating to property, and in terms included an action for the sale of real property under a mortgage (section 44). The Code provides that "before service can be made by publication an affidavit must be filed that service of a summons cannot be made within the territory on the defendant, and that the case is one of those mentioned in the preceding section." When such affidavit is filed, the party may proceed to make service by publication. Section 70.

The fifth equity rule adopted by the judges also provided for service by publication, but required the affidavit setting forth the facts authorizing service in this mode to be presented to the judge or master, who was to order the publication and name the newspaper.

No such order appears in the record of the proceedings of the foreclosure suit. The Code of 1853 contained this provision: "Sec. 73. In all cases where service may be made by publication, personal service of a copy of the summons and complaint may be made out of the territory." This section was amended by an act passed January 11, 1861, which provides that section 73 of the Code be so amended as to read as follows: "In all cases where service may be made by publication, and in all other cases where the defendants are non-residents, and the cause of action arose in the territory, suit may be brought in the county where the cause of action arose, and personal service of the summons may be made out of the territory, by the sheriff or some person appointed by him for that purpose."

Service upon the defendant in the foreclosure suit was made or attempted to be made in two ways: First, by personal service of process in St. Louis; second, by publication in the manner before stated.

The question is, whether the decree rendered on this service is void. It is to be recollected that the court rendering it was one of general original jurisdiction, and that a bill had been regularly filed relating to a subject matter confessedly within its cognizance. I am inclined to think that personal service in a foreclosure suit was authorized by the Code, §§ 44, 60, 69, 73, which in terms extends to foreclosure suits, but if not, then by the power which was given to the judges by the special act of November 4, 1858, above mentioned, and their action, expressly adopting by rule those provisions of the Code authorizing such extra-territorial service.

If it be conceded that regularly a copy of the bill should have been served with the subpœna, this defect, although one for which the decree might have been reversed, does not make it void.

But I rest my opinion that the decree was not void upon the effect which I give to the publication of the notice. The Code, § 44, provides that actions "for the sale of real property under a mortgage lien," etc., shall be brought in the county where the subject of the action is situated. Section 69 of the Code enacts that "service may be made by publication in either of the following cases: in actions brought under the forty-fourth (44) section of this Code, where the defendants reside out of the territory;" and the next section (70) authorizes such publication upon the filing of an affidavit therein mentioned without any order of court. The rules of the judges authorized publication in such cases, but required a previous order of a judge or master.

It is contended by the complainant: First, that the Code has no relation to chancery

suits, and hence it does not apply to this foreclosure proceeding; and, second, that the power given to the judges "to regulate proceedings and remedies in chancery" did not authorize them to adopt rules on the subject of serving non-residents, either personally or by publication, or, if it did, that their rule was not complied with, because the affidavit for the publication was defective and no previous order was obtained. If these positions are sound, it would probably have the effect to invalidate nearly every decree rendered by the territorial courts against non-residents or their property. I do not agree to the position that no portion of the Code can apply to chancery suits. Construing section 69 with section 44, to which it refers, I see no difficulty in holding that it authorized publication in foreclosure suits in the manner therein provided. But if this were not so, and if no part of the Code relates or was intended to relate to chancery suits, I could not then resist the conviction that in the special act of November 4, 1858, the legislature intended to confer authority of a most extensive nature upon the judges, one sufficient to authorize them to adopt the rules they did in respect to service by publication.

I therefore place my opinion that the decree was not void upon the ground that here was a publication substantially as required, both by the Code and by the rules of the judges. The defects, entirely technical, in the affidavit, do not have the effect to render the decree that was pronounced void for want of jurisdiction. If an order of publication were necessary to a regular service in this mode, it may have been made and be lost; at all events, the decree of the court expressly finds that due service of process had been made upon the defendants, and in this proceeding, which is not an appeal from, but a collateral attack on, the decree, every presumption is in favor of the regularity of the proceedings and the jurisdiction of the court. The rule is this: Where the subject matter of the suit is one which falls within the cognizance of a court of general jurisdiction, and a petition or bill calling for the exercise of the power of the court is filed, and service of process made, which the court finds or holds to be sufficient, and renders judgment, such judgment, though it may be reversed on error or appeal, is not void for reason of defects in the petition or in the mode of service or return of the officer. Miller v. U. S., 11 Wall. [78 U. S.] 268, 299, per Strong, J.; Grignon's Lessee v. Astor, 2 How. [43 U. S.] 339; Railroad Co. v. Stimpson, 14 Pet. [39 U. S.] 458; Cooper v. Reynolds, 10 Wall. [77 U. S.] 308; Voorhees v. Bank, 10 Pet. [35 U. S.] 449, 474; Morrow v. Weed, 4 Iowa, 77, and authorities there cited; Hart v. Seixas, 21 Wend. 40; 1 Smith, Lead. Cas. 378, and American notes to Crepps v. Durden [Cowp. 640]. Any other rule would unsettle titles, and has nothing to recommend it in a new state, where property is so rapidly increasing in value. Bill dismissed.

NOTE. As to jurisdiction and collateral attacks on judgments and decrees, see Smith v. Pomeroy [Case No. 13,092]. As to territorial legislative courts: Clinton v. Englebrecht, 13 Wall. [80 U. S.] 434.