LOVEJOY and others *v.* HARTFORD FIRE INS. Co. and others.

*(Circuit Court, N. D. Illinois.* February 14, 1882.)

GARNISHMENT—INSURANCE COMPANIES.

> If, at the time process of garnishment was served, the insurance companies
> had waived the execution of proofs of loss, then the action could be main-
> tained; but if they had not waived it, then garnishment could not be sus-
> tained.

On the second of December, 1880, a fire occurred at Topeka, Kansas, by which the stock of goods then in the store of the defendants C. H. Lovejoy & Co. was destroyed. The owners were insured in various amounts by the companies named. At different times in December, 1880, and the following months of January and February, but prior to the commencement of the attachment suits, efforts were made by the assured to adjust as a total loss, but without result. On the twenty-sixth of February, 1881, before the assured had rendered the proofs of loss called for by the policies as a condition precedent to liability, the creditors of C. H. Lovejoy & Co., resident at St. Louis, Milwaukee and Chicago, brought the present attachment suits on the ground of non-residence of the principal defendants. The insurance companies were garnished on the twenty-eighth of February, and severally answered, denying any indebtedness. Aside from the above services on the companies there was no levy or service of the writs of attachment. The defendants did not appear, and sundry "proofs of loss" having been filed with the companies by the assured subsequent to the date of service of the garnishment, the plaintiffs in attachment took judgments by default against C. H. Lovejoy & Co., and subsequently brought on for trial the issues raised by their replications to the answers of the garnishees.

At the close of the case for plaintiffs the garnishees moved the court to direct the jury to return a verdict for the garnishees. This motion was taken under advisement, to be decided when the entire evidence on both sides should have been introduced. The evidence being all in, the garnishees renewed their application, and thereupon the court sustained the motion upon the grounds stated in the following opinion.

BLODGETT, D. J., *(orally.)* The first question that is made in the case, which applies to all the companies that are defending here, is whether this garnishment proceeding is properly begun,—whether the necessary facts have been disclosed by the testimony to show that the

claims upon these policies were in such condition in the hands of the principal defendants that the garnishment proceedings could be brought.

The principal defendants are non-residents of this state. Suit is brought under the attachment laws of the state of Illinois. There is, and has been from the commencement of this proceeding, much doubt in my mind as to whether the original attachment suits would lie in this case. Section 739 provides that no civil suits shall be brought before either of said courts—that is, of the circuit court or the district court—against an inhabitant of the United States by any original process in any other district than that in which he was an inhabitant, or in which he is found at the time of the service of the writ. This is substantially the jurisdiction clause in the old act of 1789, and inhibits the suing of any defendant in any other district than the district in which he resides. Now, C. H. Lovejoy & Co., the principal defendants in this case, did not reside in this district. They were not found in this district, unless by judicial construction the court holds that when, by the act of 1872, congress authorized the courts of the United States to adopt the attachment acts of the various states, they thereby modified the section which I have just read to the extent of allowing one non-resident of the state of Illinois to sue another non-resident of the state of Illinois by attachment in this state, and reach the property of the non-resident defendant, if it was in the district. If that is to be the construction, which has been doubted certainly by able lawyers and judges, why then we may say that creditors of C. H. Lovejoy & Co., if they could find assets, property, choses in action, of C. H. Lovejoy & Co. within this district, could sue them in this district; and they might be said to be found in this district by finding their property. So much in regard to whether the action is even authorized by statute or not.

But it is further contended, on the part of the defendants, that the plaintiffs, in order to maintain an action, must obtain assets by garnishment or the garnishment process, against the garnishee, of something which is actually due,—some indebtedness,—or seize upon the tangible property of the defendant in attachment; for there is nothing to which jurisdiction can attach, unless you get personal service on the defendants, or unless you get a levy upon their property, or unless you get a service upon some person who is indebted. The garnishees insist that, at the time this garnishment process was served, whatever liability there was growing out of their contract re-

lations with the firm of C. H. Lovejoy & Co., under their policies of insurance, was yet contingent, and that it could not be garnished, and therefore that the court has acquired no jurisdiction in this case because the only jurisdiction which it has acquired is upon this contingent liability. Were, then, these claims contingent claims, within the meaning of the authorities, which could not be reached by garnishment? There is no doubt that it is the well-settled law now that the assured—the person to be benefited by a policy of insurance—must, after the loss has occurred, furnish proofs of loss; that is a condition precedent to the maintenance of an action by the assured. I have one of the policies in question before me, and the provision is: "Persons sustaining loss or damage by fire shall forthwith give notice of such loss to the company in writing, and, as soon after as possible, render a particular account of such loss, signed and sworn to by them, and stating," etc. (Here the court read the usual condition as to magistrate's certificate and proofs of loss.) Now it is very clear to my mind, in the light of the authorities, that there was no indebtedness from the insurance companies concerned in this loss, or who had policies upon this stock, until this condition precedent had been complied with. Whether it ever would be complied with or not was a contingency.

The loss in question occurred on the second day of December, 1880. These suits were commenced on the twenty-sixth of February, 1881, almost three months after the loss; and the service upon the garnishees was had on the twenty-eighth of February. The defendants now claim or have claimed that they had made proofs of loss, or that the making of proofs of loss had been waived, so as to obviate the necessity of serving the proofs of loss which were called for by the conditions that I have just read. I suppose it must be considered as settled. I shall consider it so, for the purposes of this case, that if the insurance companies, or either of them, that are concerned in this loss, had actually waived the proofs of loss which are called for by this clause at the time this garnishment process was served upon them, then you might say their liability was fixed, and that the only question that they could then litigate was the question as to the validity of the policy, or some other question of law involved in the case. So that if the fact were that, at the time this garnishment process was served, these insurance companies, or either of them, had waived the execution of proofs of loss, then I think this action could be maintained. But if they had not waived it, and if

v.11,no.1—5

they stood at arms' length in relation to the assured, under these policies, insisting that the assured should proceed in the manner—technical and strict manner—called for by the terms of the policies, then I do not think that this garnishment process could be sustained, and that the suits must fail by reason of the fact that these were not a garnishable. indebtedness.

It is true, there is some conflict of authority upon this point. The counsel produces a case in Pennsylvania where the supreme court of that state decided that a garnishment would lie in a case similar in its facts to this, where the loss had occurred under the policy, but where the proofs of loss had not been submitted at the time the garnishee process was served, and held that the simple operation of the garnishee process is to put the plaintiff in the garnishment proceeding into the same relation with the company that the defendant would have occupied but for the garnishment. *Girard F. & M. Ins. Co.* v. *Field,* 45 Pa. St. 129. The other cases, as the case in 28 Mich. and the case in 17 Wis. and the case in 54 Me., are directly the other way; and I think they are much the best considered cases, and much the better rule to go by, and it seems to me they settle this question.

The test question is this: Could these garnishees say truthfully, on the day they were served with process in this case as garnishees, that they did not then owe the principal defendants any sum of money, or have any choses in action or property in their hands which belonged to these principal defendants? Could they truthfully say that? Was this indebtedness such an indebtedness as was to grow due by the lapse of time, or was there something yet to be done, some other act to be performed by either of the parties, before the liability could have ripened into an indebtedness? It seems to me that that is the test of the relations of these parties. It seems to me that you ought to test the relation of these parties by that, and that the insurance companies could say that they did not owe these defendants anything at that time. It is claimed on the part of the plaintiffs that the insurance companies had waived the exhibition of these proofs of loss. There is, I will admit, some testimony on the part of the plaintiffs which might be construed, perhaps, into testimony tending to show a waiver. But my view of the duty of the court in a question of that kind is that if the testimony is so slight that the court, if the jury should find that a waiver had actually been made, would be bound or compelled to set the verdict aside, then the court should direct a verdict for the defendants.

Now, what is the testimony tending to show that there was a waiver in this case? Mr. C. J. Lovejoy testifies to all that bears upon that question, and according to my own notes, which are pretty full on that subject, it was this: He states, in substance, that about the sixth or seventh of December he called upon Norton and Dallas, who were insurance agents at Topeka, and through whom these policies had been issued, and asked for blank proofs, or blanks on which he could make up his proofs of loss. Mr. Norton said: "Well, you hadn't better make out any proofs of loss yourself; you had better leave it to the adjusters. They are here, and if they are satisfied that your proofs of loss are all right, they will make them out;" or words to that effect.

Now, waiving the question as to whether Norton had any authority in the premises, that certainly is not a waiver of the obligation on the part of the assured to make out proofs of loss, but it is simply a suggestion to him that he had not better trouble himself about it for the present. Now, Mr. Lovejoy's version of what took place between himself and the adjusters is simply this:

"A meeting was held between us at the Tefft House, and after examining and showing all my books, Stone and Black said if I would send duplicate bills to Mr. Stawitz, at St. Louis, he would come up after he had received the bills and help to make the proofs. I did send those duplicate bills to him, sworn to as was requested. After awhile Stawitz came back—about three weeks afterwards. He said he wanted an additional bank statement in order to make out the proofs, or to be satisfied, and I furnished the statements which he demanded, at once. Stawitz seemed very angry because the other adjusters didn't meet him there, and said he only represented the Hartford Company, and that he would make up the proofs for the Hartford, but told me I must make them out for the other companies."

This is all the testimony there is on the part of the plaintiffs that tends to prove a waiver of the making of these proofs of loss, or that they were ever waived; while the conduct of Lovejoy at this and subsequent times makes it very doubtful in my mind whether he then understood that Stawitz was to make up these proofs even for the Hartford. Now, we have the direct contradiction by Stawitz, and all the other parties that were present there in connection with the making of this adjustment, that they did not waive the proofs of loss; but, what is more certain and reliable, a notice was served on Mr. Lovejoy, the morning of the 13th, in which he is expressly and in explicit terms and in writing told that nothing was waived; and so, too, it is true that Mr. Charles J. Lovejoy submitted to an examination under oath before these adjusters, which lasted two or three days, but that

examination is prefaced with an express statement that at the most it is only to become part of the proofs of loss. Now it cannot be contended for a moment that this written examination of Charles J. Lovejoy is to be taken as a substitute for the proofs of loss which were called for by this policy: *First*, because it is not the proofs of loss of the assured themselves, but of Charles J. Lovejoy, who is not one of the assured, and not a member of the firm, although he was their manager; and, *secondly*, because technical proofs of loss are to contain certain things which do not appear in this examination. And it was also to be verified by the certificate of the magistrate in regard to the character and good faith of the assured, which does not accompany this examination. Aside from the fact that it only purports to be what may ultimately become a part of the proofs of loss, it does not conform to the condition by showing that it is or was intended by either party to be the proofs of loss which were submitted.

Then the conduct of Mr. Lovejoy himself with reference to the matter in obtaining the certified bills, and afterwards obtaining the bank account, and then the final statement by him on the seventeenth of February or in January, when Mr. Stawitz was there the last time, that the proofs of loss must be made out by himself, as to all but the Hartford, and Mr. Stawitz's denial that he agreed to make out the proofs for Mr. Lovejoy as far as the Hartford Company is concerned, leave the case in such condition that I do not think if I was to send this jury out to inquire upon the main fact—was there a waiver of the proofs of loss?—and they should come and say by their verdict there was a waiver, that I should feel satisfied in sustaining their verdict. I think I would be compelled to set their verdict aside. Therefore, beyond the evidence that there was no waiver of the proofs of loss, we have then this simple condition of things: These six insurance policies were issued upon the stock of goods of C. H. Lovejoy & Co. in their store at Topeka prior to the first day of December, 1880, and on the night of the first day of December the store was burned, and, as far as the proofs show, you might say there was a loss of the store and whatever was in the store at that time. The officers, or rather the agents, of these insurance companies came to Topeka within a few days after this fire, and made a partial examination of the circumstances attending the loss. They examined C. J. Lovejoy; they examined what books he could produce which pertained to the business of the concern, and demanded more light upon the subject. Before ever proofs of loss were furnished, and after, I think, any court would say that more than a reasonable time had elapsed for the fur-

nishing of those proofs in compliance with the conditions of the policy, these suits in attachment were commenced and these garnishees were served. There had been, up to that time, no fixing of the liability of the company, either as to the amounts of their liability, or whether they were liable at all.

For these reasons I deem it my duty to direct a verdict for the defendants.

### NOTE.

TERRITORIAL LIMIT OF JURISDICTION. A court created within and for a particular territory is bounded in the exercise of its power by the limits of such territory.(a) Whatever may be the extent of the jurisdiction over the subject-matter in a suit, in respect to jurisdiction over persons and property, it can only be exercised within the limits of the judicial district.(b) The circuit court has jurisdiction only over the inhabitants of the district, or persons found therein, and served with process.(c) So, where a citizen of New Hampshire and a citizen of Georgia sued a citizen of Massachusetts in New York, where he was arrested, the court had no jurisdiction;(d) but where there are two districts in a state, a citizen of such state is liable to suit in either district if served with process.(e)

JURISDICTION, HOW ACQUIRED. A federal court acquires jurisdiction over parties only by a service of process or by their voluntary appearance,(f) and only by service of process within the district,(g) and not then if he is but temporarily within the district.(h) A person who comes within the district merely for the purpose of attending a trial in a state court cannot be served with process issuing out of a United States court;(i) and if served with summons while attending the trial of a cause in the circuit court as a party, the service will be set aside.(j) Where defendant, not an inhabitant of the district, is inveigled or enticed into the district by false representations, or deceptive contrivances, service of process on him within the district is illegal.(k) If a non-resident comes into the district for the purpose of pleading to an indictment and giving bail he cannot be sued before he has a reasonable time to depart.(l) If defendant is a non-resident of the district, the record must show with certainty that process was served upon him within the district.(m)

WAIVER OF IRREGULARITIES. A federal court has no authority to issue process to another district.(n) So, the process of a circuit court cannot be served without the district in which it is established except by special author-

(a) Picquet v. Swan, 5 Mason, 35; Ex parte Graham, 3 Wash. C. C. 456.

(b) Toland v. Sprague, 12 Peters, 300; Picquet v. Swan, 5 Mason, 35.

(c) Pollard v Dwight, 4 Cranch, 424; Anderson v. Shaffer, 10 Fed. Rep. 266.

(d) Moffat v. Soley, 2 Paine, 103.

(e) McMicken v. Webb, 11 Pet. 25; Vore v. Fowler, 2 Bond, 294; Locomotive Co. v. Erie Ry. Co. 10 Blatchf. 292.

(f) Herndon v. Ridgway, 17 How. 424.

(g) Allen v. Blunt, 1 Blatchf. 480; Union Sugar Refi. v. Mathiesson, 2 Cliff. 304.

(h) Smith v. Tuttle, 5 Biss. 159.

(i) Juneau Bank v. McSpeden, 5 Biss. 64.

(j) Parker v. Hotchkiss, 1 Wall. Jr. 269. Contra, Blight v. Fisher, Pet. C. C. 41.

(k) Steiger v. Bonn, 4 Fed. Rep. 17; Union Sugar Refi. v. Mathiesson, 2 Cliff. 304.

(l) U. S. v. Bridgman, 8 Am. L. Rec. 541.

(m) Allen v. Blunt, 1 Blatchf. 480; Vore v. Fowler, 2 Bond, 294; McCloskey v. Cobb, 2 Bond, 16; Thayer v. Wales, 5 Fish. 448.

(n) Herndon v. Ridgway, 17 How. 424.

ity of law;(o) and in proceedings for relief against an interfering patent under section 4918, Rev. St., no provision is made for service of notice on parties outside of the district.(p) No judgment can be rendered against a defendant who has not been served with process in the manner pointed out, unless the defendant waives the necessary process by entering his appearance.(q) A party defendant may plead service of process on him out of the district by plea in abatement of the suit.(r) Where a defendant appears without taking exceptions, it is an admission of the regularity of the service;(s) but if he appears and answers the bill he cannot, on the hearing, object that the bill contained a prayer for process, or that he was not served.(t) And if he appears and pleads on the merits, it is a waiver of irregularity.(u)

APPLICATION OF STATUTE. This section does not apply to territorial courts.(v) Its provisions apply to process in equity as well as at law,(w) as, on a bill filed to set aside a foreclosure sale.(x) It applies exclusively to original process.(y)

PROCESS BY ATTACHMENT. The circuit court has no jurisdiction in attachment suits against a non-resident without the district.(z) Process of foreign attachment cannot be properly issued by the circuit court in cases where defendant is domiciled abroad or not found within the district, so that it can be served upon him,(a) and this applies to corporations.(b) Process of attachment on the effects of a person not an inhabitant cannot be served,(c) but if served not only on the property but on the defendant, jurisdiction attaches.(d) An assignee appointed by a bankrupt court of another district is within the rule, although there is property within the district.(e) Where a citizen of the United States is a resident in a foreign country the circuit court has no jurisdiction over a suit brought by an alien, although he has property within the district which may be attached.(f)

CORPORATIONS. A corporation can have no existence beyond the limits of the state in which it is created; hence, service of process upon its officers in another state will not confer jurisdiction upon a circuit court in that state over the corporation.(g) As a corporation cannot be made a party to a civil suit by original process in any other district than the state wherein it was created,(h) so a national bank cannot be sued out of the district in which it is located;(i) but a trading corporation may be sued in any district in which it

(o) Toland v. Sprague, 12 Pet. 300; Ex parte Graham, 3 Wash. C. C. 456; Wilson v. Graham, 4 Wash. C. C. 53.

(p) Liggett v. Miller, 1 Fed. Rep. 203.

(q) Levy v. Fitzpatrick, 15 Pet. 167.

(r) Van Antwerp v. Hulburd, 7 Blatchf. 426.

(s) Gracie v. Palmer, 8 Wheat. 699.

(t) Segee v. Thomas, 3 Blatchf. 11.

(u) Toland v. Sprague, 12 Pet. 300; Pollard v Dwight, 4 Cranch, 421; Irvine v. Lowry, 14 Pet. 293.

(v) Salisbury v. Sands, 2 Dill. 270.

(w) Winter v. Ludlow, 3 Phila. 464.

(x) Pacific R. R. v. M. P. Ry. Co. 3 Fed. Rep. 772.

(y) Picquet v. Swan, 5 Mason, 35

(z) Hollingsworth v. Adams, 2 Dall. 396; Toland v. Sprague, 12 Pet. 300; Chaffee v. Hayward,

20 How. 208; Day v. Newark Manuf'g Co. 1 Blatchf. 628; Saddler v. Hudson, 2 Curt. 6; Mauldin v. Carll, 3 Hughes, 249; Picquet v. Swan, 5 Mason, 35; Richmond v. Dreyfous, 1 Sumn. 131.

(a) Toland v. Sprague 12 Pet. 300; Anderson v. Shaffer, 10 Fed. Rep. 266.

(b) Myers v. Dorr, 13 Blatchf. 22.

(c) Pollard v. Dwight, 4 Cranch, 424.

(d) North v McDonald, 1 Biss. 57; Anderson v. Shaffer, 10 Fed. Rep. 266.

(e) Shainwald v. Lewis, 5 Fed. Rep. 510.

(f) Picquet v. Swan, 5 Mason, 35.

(g) Northern Ind. R. Co. v. Michigan Cent. R. Co. 15 How. 233; Day v. Newmark. Manuf'g Co. 1 Blatchf. 628; Decker v. New York B. & P. Co. 11 Blatchf. 76; Myers v. Dorr, 13 Blatchf. 22.

(h) Myers v. Dorr, 13 Blatchf. 23.

(i) Main v. Second Nat. Bank, 6 Biss. 26.

conducts its business,(*j*) and a foreign corporation may be sued in a district other than that of which it is a resident, if it has a duly-authorized resident agent qualified to acknowledge service of process;(*k*) or if it consents that process may be served on its agent in such state, jurisdiction attaches.(*l*) A foreign corporation doing business within the state is liable to suit by service of process on an agent,(*m*) although there is no state law requiring it to appoint an agent to accept service of process.(*n*)

A PERSONAL PRIVILEGE AND MAY BE WAIVED. This section is not a denial of jurisdiction, but the grant of a privilege to defendant not to be sued out of the state where he resides, unless served with process in the state where suit is brought;(*o*) and under its provisions the privilege granted to him may be waived,(*p*) as by a voluntary appearance;(*q*) and his appearance without process is a waiver of the privilege to object to the non-service of process.(*r*) So appearing and moving to dismiss the bill for want of equity,(*s*) or an appearance unaccompanied by a plea claiming the privilege, is a waiver of it.(*t*) For an appearance to confer jurisdiction the party must be a party to the record.(*u*) If a party is a non-resident he may appear in the suit and plead his personal privilege,(*v*) and such an appearance is not a waiver;(*w*) nor is it a waiver to appear and plead to the jurisdiction, by an attorney.(*x*) Where a bill was filed in the southern district of Mississippi against four defendants, two of whom appeared for the purpose of moving to dismiss the bill and the other two declined to appear and process was not served on them, the court had no alternative but to dismiss the bill, they being necessary parties.(*y*)—[ED.

(*j*) Hayden v. Androscoggin Mills, 1 Fed. Rep. 93.

(*k*) Runkle v. Lamar Ins. Co. 2 Fed. Rep. 9; Moch v. Va. Fire & M. Ins. Co. 10 Fed. Rep. 696.

(*l*) Ex parte Schollenberger, 96 U. S. 359; Knott v. Southern L. Ins. Co. 2 Woods, 479; Ehrman v. Teutonia Ins. Co. 1 Fed. Rep. 471; Runkle v. Lamar Ins. Co. 2 Fed. Rep. 9; Fonda v. British Am. Ins. Co. 10 Chi. Leg. News, 309; Albright v. Empire Trans. Co. 18 Alb. L. J. 313. Contra, Pomeroy v. New York & N. H. R. Co. 4 Blatchf. 120; Southern & A. T. R. Co. v. New Orleans, M. & T. R. Co. 2 Cent. Law J. 88; Stillwell v. Empire F. Ins. Co. 4 Cent. Law J. 463.

(*m*) Albright v. Empire Trans. Co. 18 Alb. L. J. 313. See Brownell v. T. & B. R. Co. 3 Fed. Rep. 761; Moch v. Va. Fire & M. Ins. Co. 10 Fed. Rep. 696.

(*n*) Wilson Pack. Co. v. Hunter, 11 Chi. Leg. News, 207.

(*o*) Harrison v. Rowan, Pet. C. C. 489.

(*p*) Flanders v. Ætna Ins. Co. 3 Mason, 153.

(*q*) Harrison v. Rowan, Pet. C. C. 489.

(*r*) Gracie v. Palmer, 8 Wheat. 699; Segee v. Thomas, 3 Blatchf. 11; Kelsey v. Pennsylvania R. Co. 14 Blatchf. 89; McCloskey v. Cobb, 2 Bond, 16; Flanders v. Ætna Ins. Co. 3 Mason, 153; Harrison v. Rowan, Pet. C. C. 489; Clarke v. Navigation Co. 1 Story, 531.

(*s*) Jones v. Andrews, 10 Wall. 327.

(*t*) Harrison v. Rowan, Pet. C. C. 489.

(*u*) Kentucky S. M. Co. v. Day, 2 Sawy. 468.

(*v*) Teese v. Phelps, 1 McAll. 17.

(*w*) Harrison v. Rowan, Pet. C. C. 489.

(*x*) Commercial Bank v. Slocomb, 14 Pet. 60; Thayer v. Wales, 5 Fish. 448; Decker v. New York B. & P. Co. 11 Blatchf. 76.

(*y*) Herndon v. Ridgway, 17 How. 424.