## Case No. 3,685.
### DAY v. NEWARK INDIA-RUBBER MANUF'G CO.

[1 Blatchf. 628;[1] 1 Fish. Pat. Rep. 394.]

Circuit Court, S. D. New York. Oct. Term, 1850.

FEDERAL COURTS—JURISDICTION IN PATENT CASES—TERRITORIAL LIMITS—HABITAT OF CORPORATION—FOREIGN ATTACHMENT—STATE PRACTICE.

1. Although the circuit courts of the United States have jurisdiction of all cases at law and

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

in equity arising under the patent laws for infringements of patents, without regard to the citizenship of the parties or the amount in controversy; yet, under section 11 of the judiciary act of 1789 (1 Stat. 78), in order to give jurisdiction, the defendant must be an inhabitant of the district in which the suit is brought, or be found within it at the time of serving the original process, whatever may be the nature or character of that process.

[Cited in Winter v. Ludlow, Case No. 17,-891; Atkins v. Fibre Disintegrating Co., Id. 602; Ex parte Schollenberger, 96 U. S. 378; Brownell v. Troy & B. R. Co., 3 Fed. 761.]

2. Where a manufacturing corporation, chartered by New-Jersey, and having its place of business and manufactory in that state, had a store in New-York conducted by its agents, where its goods were sold, and a suit was commenced against it in this court by attaching its goods found in that store, and serving a summons on its president at New York: yet, *held*, that the corporation was not an inhabitant of this district, or found within it at the time of serving the process, and that this court had no jurisdiction of the action.

[Cited in Decker v. New York Belting Co., Case No. 3,727; Fonda v. British-American Assur. Co., Id. 4,904; Williams v. Empire Transp. Co., Id. 17,720; Walker v. Lea, 47 Fed. 649.]

3. A corporate body created by a sister state can have no corporate existence beyond the limits of the territory of that state.

[Cited in Pomeroy v. New York & N. H. R. Co., Case No. 11,261; Main v. Second Nat. Bank, Id. 8,976; Tioga R. Co. v. Blossburg & C. R. Co., 20 Wall. (87 U. S.) 148; Williams v. Empire Transp. Co., Case No. 17,-720; Runkle v. Lamar Inv. Co., 2 Fed. 13; Boston Electric Co. v. Electric Gas-Lighting Co., 23 Fed. 839; Zambrino v. Galveston, H. & S. A. Ry. Co., 38 Fed. 452.]

4. This court would, under section 11 of the judiciary act of 1789, have no jurisdiction in suits against foreign corporations, even where the state practice of New-York, if adopted by it, would authorize the institution of such suits by attaching their goods within the jurisdiction of the court.

[Cited in Myers v. Dorr, Case No. 9,988; Southern Atlantic Tel. Co. v. N. O., M. & T. R. Co., Id. 13,185; Cummings v. Grand Trunk Ry. Co., Id. 3,475; Stillwell v. Empire Fire Ins. Co., Id. 13,449; Brownell v. Troy & B. R. Co., 3 Fed. 763.]

5. This court has not, heretofore, by any of its rules, adopted the practice of the state courts of New-York which provides for commencing suits against foreign corporations by attachment.

[Cited in New England Ins. Co. v. Detroit & C. Steam Nav. Co., Case No. 10,154.]

This was a motion on the part of the defendants [the Newark India-Rubber Manufacturing Company] to quash a writ of foreign attachment and a summons issued out of this court against them by the plaintiff [Horace H. Day] for an alleged infringement of certain letters patent. Under the writ a large amount of their goods had been seized in the city of New York, and were in the possession of the marshal. The writ was issued in pursuance of an act of the legislature of the state of New-York, providing for

the commencement of suits against foreign corporations by process of attachment against any property belonging to them that may be found within the state. 2 Rev. St. p. 459, § 15, etc. The defendants were a corporation created by the legislature of the state of New-Jersey, for the manufacture of India-rubber goods; and their place of carrying on the manufacture and of business was at the city of Newark in that state. They had a store in the city of New-York, where their manufactured articles were received for the purposes of sale, which store was conducted by their agents. The goods seized by virtue of the attachment were found in this store, under the circumstances stated; and the summons was served at New-York upon the president of the company who resided at Newark, but was at the time casually in New-York on business. The plaintiff was a resident of the state of New-Jersey.

Francis B. Cutting and Edgar S. Van Winkle, for plaintiff.

Seth P. Staples and Edward Sandford, for defendants.

NELSON, Circuit Justice. The seventeenth section of the patent act of July 4th. 1836 (5 Stat. 124), provides, that all actions arising under any law of the United States granting to inventors the exclusive right to their inventions shall be originally cognizable, as well in equity as at law, by the circuit courts of the United States, or any district court having the powers and jurisdiction of a circuit court. The jurisdiction of the circuit courts embraces, therefore, all cases both at law and in equity arising under the patent laws for infringements of letters patent, without regard to the citizenship of the parties, or the amount in controversy. But, the eleventh section of the judiciary act of 1789 (1 Stat. 78), which provides for service of process in the commencement of suits in this court, is as applicable to this class of cases as to any other in which jurisdiction may exist. That provision is as follows: "But no person shall be arrested in one district for trial in another, in any civil action before a circuit or district court. And no civil suit shall be brought before either of the said courts against an inhabitant of the United States, by any original process, in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ."

In the case of Toland v. Sprague, 12 Pet. [37 U. S.] 300, which was the case of a foreign attachment issued by the circuit court of the United States for the eastern district of Pennsylvania, agreeably to the practice of the courts of that state, which had been adopted by the circuit court, it was held, after a full examination: 1. That, by the

general provisions of the laws of the United States, the circuit courts can issue no process beyond the limits of their districts. 2. That, independently of positive legislation, the process can only be served upon persons within the same districts. 3. That the acts of congress adopting the state process, adopt the forms and modes of service only, so far as the persons are rightfully within the reach of such process, and do not intend to enlarge the sphere of the jurisdiction of the circuit courts. 4. That the right to attach property to compel the appearance of persons, can properly be used only in cases in which such persons are amenable to process in personam; and that, even where a person is amenable to process in personam, an attachment against his property cannot be issued, except as part of or together with process to be served upon his person.

In that case the plaintiff was a citizen of the state of Pennsylvania; and the defendant was a citizen of Massachusetts, but was, and had been for many years a resident of Gibraltar. The attachment was levied on his goods found in the district of Pennsylvania. The defendant appeared and defended the suit, which gave the circuit court jurisdiction; otherwise it would have been denied. The same point had been previously ruled by Judge Story in the case of Picquet v. Swan [Case No. 11,134], and in which it was also held, that the judiciary act of 1789 does not contemplate compulsory process against any person in any district, unless he is an inhabitant of the district, or is found within it at the time of serving the writ.

And, in the case of Richmond v. Dreyfous [Id. 11,799], it was held by the same learned judge, that a foreign attachment cannot be maintained in the circuit court of the United States against the principal defendant, unless he is an inhabitant of the district where the suit is brought, or is found within it at the time of the service of the process; and that service upon trustees or garnishees within the district is not sufficient to found a judgment against the principal. That case arose in the district of Rhode-Island, and the goods of the principal defendant, who was a citizen of and a resident in the state of Pennsylvania, were attached within the district, according to the statute of the former state regulating proceedings in cases of foreign attachments. The proceedings were quashed for want of jurisdiction.

Upon the provisions of the eleventh section of the judiciary act above referred to, therefore, and the expositions given to it in the several cases in which it has come under the observation of the courts, it must be regarded as settled, that, in order to give jurisdiction to the circuit courts of the United States, the party defendant must be an inhabitant of the district in which the suit is brought, or he must be found within it at the time of the service of the original process; and this, whether the suit be commenced by writ, summons, or attachment, or whatever may be the nature or character of the process used. No exception is found in the act of congress providing for the commencement of suits in these courts, nor in the judicial expositions given to it. And the simple question in this case, therefore, is, whether or not the defendants, as a corporate body, or in their corporate existence, have been brought within either of the alternatives provided for in the act, so that the service of the process, as disclosed in the papers before us, can give to this court jurisdiction of the case. Are they inhabitants of this district, within the meaning of the act of congress, or were they found within it at the time of the service of the attachment and summons?

Assuming that it has been shown on the part of the plaintiff, that the president of the corporation or any of its officers were inhabitants of or were found within this district at the time of the service, or that the goods attached were the property of the corporation and were found within it, the objection to the jurisdiction still exists; for, the party against whom the suit is brought is the corporation created by the legislature of the state of New-Jersey. This is the body charged with the infringement of the plaintiff's patent, and against whom the suit has been instituted; and it is this body that must be shown to be an inhabitant of the district or be found within it, in order to give the jurisdiction. Now, we think it is quite clear, that a corporate body created by the law of a sister state can have no corporate existence beyond the limits of the territory within which the law creating it can operate; and, that, when and where the law ceases to have any force and effect, this legal entity and mere creature of the law ceases to have any existence. If the law should be abrogated by the legislature creating it, it would cease to exist in the jurisdiction within which it was created, the law bringing it into existence and upholding it being no longer in force; and, for the like reason, it can never have any legal being or existence extra-territorial, where the law creating it never had any operation or force.

We do not intend, nor have we time, in the pressure of the business of a circuit, to go into an illustration of this general principle by a reference to the character, powers, and faculties of these institutions, or to define the limits of the operation of the laws of the states, upon which their existence depends; but, shall content ourselves by stating the general principle, and briefly referring to what was said by the chief justice in delivering the opinion of the court in the case of Bank of Augusta v. Earle, 13 Pet. [38 U. S.] 588. Referring to the argument in that case on the part of the defendants, that a corporation, from the very nature of its being, could have no authority to contract out of the lim-

its of the state within which it was created, as the laws of a state had no extra-territorial operation, he observed: "It is very true that a corporation can have no legal existence out of the boundaries of the sovereignty by which it was created. It exists only in contemplation of law, and by force of the law; and where that law ceases to operate, and is no longer obligatory, the corporation can have no existence. It must dwell in the place of its creation, and cannot migrate to another sovereignty. But although it must live and have its being in that state only, yet it does not by any means follow that its existence there will not be recognized in other places; and its residence in one state creates no insuperable objection to its power of contracting in another."

The court held in that case that, though the bank, as a corporation, must be regarded as an artificial being, existing only in the state in which it was created, yet it was as competent, within the scope of its powers, to make contracts in another sovereignty through its agents, as a natural person, if permitted by the laws of that government to exercise the faculties with which it was endowed. It is upon this principle, doubtless, that the defendants have established and are maintaining a depot for the sale of their manufactured articles in the city of New-York, which is conducted by their agents and under their authority.

Without pursuing the examination of the case further, we are satisfied for the reasons stated, that neither the levying of the writ of attachment upon the goods of the defendants in this district, nor the service of the summons upon their president within it, nor both together, have the effect to give jurisdiction to the court in this case against the defendants; and further, that, according to the true construction of the eleventh section of the judiciary act of 1789, the court would have no jurisdiction in suits instituted against foreign corporations, even in cases where the state practice, if adopted by it, would authorize the institution of such suits by the attachment of their goods found within the jurisdiction.

We have not deemed it important, in the view we have taken of the case, to enquire whether or not this court has heretofore, by any of its rules, adopted the practice of the state courts in cases of foreign attachment; but will simply state our conclusion, which is, that it has not, and that, upon this ground, the proceeding by attachment would be irregular and should be set aside. As the ground first stated goes to the jurisdiction of the court, we have preferred placing our decision upon it, as it reaches beyond the question in respect to the nature and character of the process by which the suit was commenced.

We shall, therefore, direct that a rule be entered quashing the writ of attachment and the summons which have been unadvisedly issued in the case.