## ZAMBRINO *v.* GALVESTON, H. & S. A. RY. Co.

*(Circuit Court, W. D. Texas, El Paso D.*   March 19, 1889.)

FEDERAL COURTS—ACTION BETWEEN ALIEN AND CORPORATION—WHERE MAINTAINABLE.

Act March 3, 1887, provides that no civil suit shall be brought before the federal courts in any district other than that whereof defendant is an inhabitant, except where jurisdiction is founded only on diverse citizenship. The act of 1875 allowed suit to be brought also in the district in which defendant should be found. Plaintiff is a citizen of Mexico, and defendant is a Texas railroad corporation, whose principal office is in the Eastern district of Texas, out whose railroad extends into the Western district, in which it has agents to transact its ordinary business. By Rev. St. Tex. art. 4120, defendant's public office shall be considered its domicile. By article 1198, subd. 21, defendant may be sued in any county into which its railroad extends, and process may be served on its local agent, (article 1223.) *Held,* that suit may be brought in the Western district.

At Law.   On exceptions to plea in abatement.
*A. G. Wilcox, W. B. Sloan,* and *McGinnis & McGinnis,* for plaintiff.
*Davis, Beall & Kemp,* for defendant.

MAXEY, J.   This suit was instituted by Pablo Zambrino against the Galveston, Harrisburg & San Antonio Railway Company to recover damages resulting from personal injuries received by Zambrino in El Paso county, while employed as a laborer upon a construction train of the railway company, which was at the time engaged in the work of repairing the road. Plaintiff is a citizen of the state of Chihuahua in the republic of Mexico, and the defendant is a corporation created by special acts of the legislature of this state. Sp. Laws Tex. 1870, p. 45 *et seq.;* Sp. Laws 1850, p. 194 *et seq.* A plea in abatement is filed by the defendant, in which is asserted its immunity from suit within this judicial district, and to this plea exceptions are interposed by the plaintiff.

Several points have been raised in argument, mainly technical in their character, which, at the request of the parties, will not be considered, and the sole question to be determined may be thus stated:   Is the defendant suable in the circuit court of the United States within the Western judicial district of Texas?   It is averred in the plea that the domicile and principal office of defendant is located at the city of Houston, which is within the Eastern judicial district. The pertinent facts bearing upon the issue presented are agreed upon by the parties, and will be regarded as incorporated into the plea, and thus considered by the court in connection with the question of law to be decided. They are as follows:   The plaintiff is a citizen of Mexico, and his cause of action arose in El Paso county, Tex. The defendant is a domestic railway corporation, having its principal office at the city of Houston within the Eastern judicial district, and a railway line extending from the city of Houston through the Western judicial district into the city of El Paso. At the latter place, and at other stations along the line of its road, the defendant has agents and servants through whom its usual and ordinary busi-

ness of a railway common carrier is transacted, and upon whom process may be served under the laws of Texas. The act of congress, approved March 3, 1887, regulating the jurisdiction of the circuit courts, provides:

"That the circuit courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, * * * in which there shall be a controversy between citizens of different states, in which the matter in dispute exceeds, exclusive of interest and costs, the sum or value aforesaid, or a controversy between citizens of the same state claiming lands under grants of different states, or a controversy between citizens of a state and foreign states, citizens, or subjects, in which the matter in dispute exceeds, exclusive of interest and costs, the sum or value aforesaid. * * * But no person shall be arrested in one district for trial in another in any civil action before a circuit or district court; and no civil suit shall be brought before either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant; but, where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant." 24 St. at large, 552, 553. See, also, 25 U. S. St. (1887–1888) pp. 433, 434.

Excepting cases where jurisdiction is founded only on the fact that the action is between citizens of different states, suit must, in pursuance of the act of 1887, be brought in the district of which the defendant is an inhabitant. Such was not the law as it aforetime existed in the act of March 3, 1875, and prior judiciary acts. The corresponding provision of the act of March 3, 1875, reads as follows:

"And no civil suit shall be brought before either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving such process or commencing such proceeding." 18 St. at Large, 470; Desty, Fed. Proc. (6th Ed.) p. 131, § 629a.

The act of 1875, in this particular, was a substantial re-enactment of the act of 1789, (Rev. St. § 739.) *Ex parte Schollenberger*, 96 U. S. 375. It will thus be seen that an important clause of the act of 1875 is left out of the act of 1887, to-wit: "Or in which he shall be found at the time of serving such process or commencing such proceeding." It follows that, if the defendant be suable in this district, such result springs only from the fact of local inhabitancy.

Before discussing the question as to whether a domestic railway corporation can be an inhabitant of any district other than that in which its principal office is located, it may be well to inquire into the general question of jurisdiction, proper, of this court, affecting corporations, as distinguished from the mere place of suability; for it is well understood that the general jurisdiction of the courts is not affected by an act of congress prescribing the place where a person may be sued. The latter is in the nature of a personal privilege or exemption in favor of a defendant, and may, or may not, be waived, at his election. "If," say the supreme court, "the citizenship of the parties is sufficient, a defendant may consent to be sued anywhere he pleases." *Ex parte Schollenberger*, 96 U. S. 378;

*U. S.* v. *Telephone Co.*, 29 Fed. Rep. 35; *Fales* v. *Railway Co.*, 32 Fed. Rep. 676.

The act, regulating the jurisdiction of circuit courts, provides, that they shall have original cognizance of civil suits in which there shall be "a controversy between citizens of a state and foreign states, citizens, or subjects." Of the jurisdiction in this case, both as to subject-matter and the parties, there can be no doubt. As to subject-matter, suit is brought to recover damages in an amount exceeding $2,000. As affecting the parties, the plaintiff is a citizen of a foreign state, and the defendant is a Texas corporation. Whatever doubts may have been formerly expressed by the courts, touching the citizenship of corporations for jurisdictional purposes, (*Strawbridge* v. *Curtiss*, 3 Cranch, 267; *Bank* v. *Deveaux*, 5 Cranch, 61 *et seq.*,) the question has been effectually set at rest by later cases and is no longer open to controversy. The present doctrine, as settled by the supreme court, is, "that where a corporation is created by the laws of a state, the legal presumption is that its members are citizens of the state in which alone the corporate body has a legal existence; and that a suit by or against a corporation in its corporate name must be presumed to be a suit by or against citizens of the state which created the corporate body; and that no averment or evidence to the contrary is admissible for the purposes of withdrawing the suit from the jurisdiction of a court of the United States." *Steam-Ship Co.* v. *Tugman*, 106 U. S. 120, 121, 1 Sup. Ct. Rep. 58; *Railroad Co.* v. *Koontz*, 104 U. S. 12; *Railroad Co.* v. *Harris*, 12 Wall. 81, 82; *Paul* v. *Virginia*, 8 Wall. 178; *Muller* v. *Dows*, 94 U. S. 445; *Cowles* v. *Mercer Co.*, 7 Wall. 121; *Railroad Co.* v. *Wheeler*, 1 Black, 296, 297; *Marshall* v. *Railroad Co.*, 16 How. 314 *et seq.*; *Railroad Co.* v. *Letson*, 2 How. 497 *et seq.*

Jurisdiction in the case existing, is the suit brought within the proper district? Reference has already been made to the act of 1875 and prior judiciary acts. Notwithstanding those acts, like the act of 1887, authorized suits against a person in the district of which he was an inhabitant, as well (in this respect unlike the act of 1887) as where he might be found, it seems that prior to 1887, when corporation cases, involving the right of the corporation to be sued at a particular place, or in a state other than that of its creation, were presented to the courts for determination, they preferred to rest their decisions rather upon the ground that the corporation was "found" within a certain district than upon the ground of inhabitancy; and no decision of the supreme court has been found by me, or called to my attention, where the point was directly made and passed upon that a corporation is an inhabitant only of the state by which it is created. A similar view is expressed by Judge BLODGETT in the case of *Manufacturing Co.* v. *Manufacturing Co.*, 34 Fed. Rep. 820. It is a matter of some interest to note that, in the earlier cases, several of the circuit courts declined to assume jurisdiction in suits against foreign (non-resident) corporations, although they were engaged in the conduct of their ordinary business in the state where the suit was brought, and had therein agents and servants upon whom process might be served. In the discussion of the question Judge GRESHAM uses this

language: "It is too plain for argument that a corporation can not be found where it can have no legal existence," (*Hume* v. *Railroad Co.*, 8 Biss. 34;) and equally emphatic is Judge WOODRUFF when he says "such corporation cannot be found out of the state wherein it is created, within the meaning of the statute, and be served by or through its officers." *Myers* v. *Dorr*, 13 Blatchf. 27. That view of the question was also taken by Mr. Justice NELSON and other judges, but it was completely overthrown by the supreme court in the case of *Ex parte Schollenberger*, in which Mr. Chief Justice WAITE, speaking for the court, says:

"We are aware that the practice in the circuit courts generally has been to decline jurisdiction in this class of suits. Upon an examination of the reported cases in which this question has been decided, we find that in almost every instance the ruling was made upon the authority of the late Mr. Justice NELSON in *Day* v. *Manufacturing Co.*, 1 Blatchf. 628, and *Pomeroy* v. *Railroad Co.*, 4 Blatchf. 120. These cases were decided by the learned justice, the one in 1850, and the other in 1857, long before our decision in *Railroad Co.* v. *Harris*, *supra*, which was not until 1870, and are, as we think, in conflict with the rule we there established. It may also be remarked that Mr. Justice NELSON, as a member of this court, concurred in that decision." 96 U. S. 378.

Since the case of *Insurance Co.* v. *French*, 18 How. 404 *et seq.*, it has been uniformly held by the supreme court that a corporation "cannot migrate, but may exercise its authority in a foreign territory upon such conditions as may be prescribed by the law of the place. One of these conditions may be that it shall consent to be sued there. If it do business there, it will be presumed to have assented, and will be bound accordingly." *Railroad Co.* v. *Harris*, 12 Wall. 81. And it is further held that "a corporation of one state, doing business in another, is suable in the courts of the United States established in the latter state, if the laws of that state so provide, and in the manner provided by those laws." *Insurance Co.* v. *Woodworth*, 111 U. S. 146, 4 Sup. Ct. Rep. 364. The doctrine is clearly stated in an able opinion rendered by Judge JACKSON in the *Telephone Case*, before cited, where the leading authorities are collected. 29 Fed. Rep. 35.

The defendant, admitting the general principle, established by the courts, that a corporation created by one state may be "found" and sued in another in the manner provided by the laws of the latter, contends that the rule in no wise affects the residence or habitation of the corporation; that its residence or habitation is at the place of its principal office, and cannot be elsewhere; and that suits against it must be brought in the district in which such principal office is located, that being the only place of which it can be an inhabitant. While Judge BLODGETT inclines to the view that a corporation must be held to be an inhabitant only of the place "where it has its principal place of business, where its corporate offices and records are kept, and its corporate meetings are lawfully held," he thus defines "inhabitant:"

"An 'inhabitant' of a place is one who ordinarily is personally present there, not merely *in interne*, but as a resident and dweller therein. *Holmes* v. *Railroad Co.*, 9 Fed. Rep. 229. 'Inhabitant: One who dwells or resides

permanently in a place, or has a fixed residence, as distinguished from an occasional lodger or visitor.' Imperial Dict. 'Inhabitant: 2. (Law.) One who has a legal settlement in a town, city, or parish; a resident.' Webst. Dict. 'Inhabitant: A dweller or householder in any place.' Toml. Law Dict." 34 Fed. Rep. 818, 819.

"Citizenship" and "residence" are not synonymous terms, (*Robertson* v. *Cease*, 97 U. S. 648,) although "resident" and "inhabitant" are usually so regarded, (*In re Wrigley*, 8 Wend. 140; *Roosevelt* v. *Kellogg*, 20 Johns. 210; *Brown* v. *Boulden*, 18 Tex. 434; Bouv. Law Dict. tit. "Residence;") and while a person may be said to have but one domicile, he may have several residences, (*Crawford* v. *Carothers*, 66 Tex. 200; *Brown* v. *Boulden*, 18 Tex. 434.) It is said by Mr. Morse in his Treatise on Citizenship, at page 99, that—

"While an individual can have but one domicile, he may have many residences; the residence may be constructive. * * * The word 'reside' is used in two senses,—the one, constructive, technical, legal; the other, denoting the personal actual habitation of individuals."

The definitions given apply properly to natural, not artificial, persons; to individuals endowed with will and intelligence, rather than to mere creations of law. But corporations are held to be "inhabitants." Thus, "a corporation created by and doing business in a particular state, is to be deemed to all intents and purposes as a person, although an artificial person, an inhabitant of the same state, for the purposes of its incorporation, capable of being treated as a citizen of that state, as much as a natural person." *Railroad Co.* v. *Letson*, 2 How. 558. By the laws of Texas, "person" includes a corporation. Rev. St. art. 3140, subd. 2. Referring to the duty of corporations, imposed upon inhabitants by the statute of Henry VIII. to repair bridges and highways, Mr. Chief Justice MARSHALL says that—

"Under this statute those have been construed inhabitants who hold lands within the city where the bridge to be repaired lies, although they reside elsewhere."

And further, on the same page, it is said:

"Lord COKE says: 'Every corporation and body politic residing in any county, riding, city, or town corporation, or having lands or tenements in any shire, *quæ propriis manibus et sumptibus possident et habent*, are said to be inhabitants there, within the purview of this statute.'" *Bank* v. *Deveaux*, 5 Cranch, 88, 89; *Railroad Co.* v. *Letson*, 2 How. 558.

The English doctrine as to the competency of an American corporation to acquire a residence in England is stated by Justice BLACKBURN, in *Newby* v. *Fire-Arms Co.* In that case the defendant corporation had a place of business in England, and there *de facto* carried on its business, just as an English corporation might have done, but the principal place of business and head office were in America. The court say:

"Such a corporation does, for many purposes, reside both in England and in its own country. In the case of *Iron Co.* v. *Maclaren*, 5 H. L. Cas. 459, Lord ST. LEONARDS, taking a different view of the facts from that taken by

Lords BROUGHAM and CRANWORTH, thought the Scotch corporation was resident in England. We think that there is great good sense in what Lord ST. LEONARDS states to be the law on his view of the facts. He says: 'If the service on the agent is right, it is because, in respect of. their house of business in England, they have a domicile in England, and in respect of their manufactory in Scotland they have a domicile there. There may be two domiciles, and two jurisdictions; and in this case there are, as I conceive, two domiciles and a double sort of jurisdiction,—one in Scotland and one in England; and for the purpose of carrying on their business one is just as much the domicile of the corporation as the other.' The majority of the lords took a different view of the facts, and thought that, though the corporation possessed property in England, and had agents there, they did not carry on business there; but we do not find that they differed from Lord ST. LEON-ARDS' view of the law, if they had agreed as to his facts; and in the present case the fact is clear that the American company are carrying on trade themselves in London, and therefore, we think, must be treated as resident here." L. R. 7 Q. B. 293, 1 Moak, Eng. R. 326, 327.

The supreme court lends recognition to the view that a corporation may have "two domiciles and a double sort of jurisdiction," in the case of *Insurance Co.* v. *Woodworth.* Mr. Justice BLATCHFORD, speaking for the court, in a suit brought in the state of Illinois by a citizen of that state against a Massachusetts corporation, says:

"In view of this legislation and the policy embodied in it, when this corporation, not organized under the laws of Illinois, has by virtue of those laws a place of business in Illinois, and a general agent there, and a resident attorney there for the service of process, and can be compelled to pay its debts there by judicial process, and has issued a policy payable on death to an administrator, the corporation must be regarded as having a domicile there in the sense of the rule that the debt on the policy is assets at its domicile, so as to uphold the grant of letters of administration there." 111 U. S. 145, 4 Sup. Ct. Rep. 364.

It is apparent, from an examination of the *Woodworth Case,* that a corporation can not only have a domicile in the state of its creation, but for certain purposes, jurisdictional in their nature, it may have an additional one in some other state. Two domiciles being admitted, the conclusion is evident that it may be a resident or an inhabitant of two or more states. Indeed, the assumption seems to me to be unsound, which denies the existence of a double habitation. ' "All that there is," say the supreme court, "in the legal residence of a corporation in the state of its creation consists in the fact that by its laws the corporators are associated together and allowed to exercise as a body certain functions, with a right of succession in its members. Its officers and agents constitute all that is visible of its existence; and they may be authorized to act for it without, as well as within, the state. There would seem, therefore, to be no sound reason why, to the extent of their agency, they should not be equally deemed to represent it in the states for which they are respectively appointed, when it is called to legal responsibility for their transactions." *St. Clair* v. *Cox,* 106 U. S. 355, 1 Sup. Ct. Rep. 354. In his work on Removal of Causes, at page 38, Judge Speer adopts

the view that a corporation, while it can only be a citizen and have its legal residence in the state which creates it, may through its agents become an inhabitant of several states, so that it may be sued."

It is also said by the supreme court, speaking of a corporation: "This ideal existence is considered as an inhabitant when the general spirit and purposes of the law require it." And the court propounds the question: "If it be so for the purposes of taxation, why is it not so for the purposes of a suit in the circuit court of the United States, when the plaintiff has the proper residence?" 2 How. 559. The inquiry may be further extended. Do not the general spirit and purposes of the law require a foreign corporation to be an inhabitant of a state when it has agents who transact its corporate business there, and when, under the laws of that state, it may be sued there, and service of process had upon such resident agents? To deny its inhabitancy, under the circumstances named, would deprive the circuit courts of jurisdiction in an important class of cases, which it is thought was never intended by congress in the enactment of the law of March 3, 1887. For example: An English land, insurance, mortgage, or cattle company, doing business in Texas through the medium of its agents, has the right to invoke the aid of the circuit courts to enforce its rights of property in a suit against a citizen of Texas. But if the corporation be, as urged by the defendant, an inhabitant only of England, the same courts would be powerless to extend relief to the Texas citizen. Such seems not to be the doctrine of the English courts, nor of the supreme court of the United States. If I understand the decisions, in my judgment, it is going too far to suppose that the circuit courts are stripped of their jurisdiction, in cases of that character, by the mere omission in the act of 1887 of the words, contained in the act of 1875,—"or in which he shall be found at the time of serving such process, or commencing such proceeding."

The defendant, however, insists that the question has been settled by the supreme court and several of the circuit courts in the following cases: *Ex parte Schollenberger, supra; Railroad Co.* v. *Koontz,* 104 U. S. 11; *Filli* v. *Railroad Co.,* 37 Fed. Rep. 66; *Denton* v. *International Co.,* 36 Fed. Rep. 1, and *Fales* v. *Railway Co.,* 32 Fed. Rep. 673 *et seq.;* and there may be added, *Insurance Co.* v. *Francis,* 11 Wall. 216. It may be admitted that the circuit court decisions go to the extent claimed for them by the defendant, but, with due respect be it said, I am unable to concur either in the reasoning of the judges, or in the deductions drawn by them from the decisions of the supreme court. They rely mainly upon the *Cases of Schollenberger* and *Koontz.* In *Filli* v. *Railroad Co.,* Judge LACOMBE says:

"Analogy would indicate that the place of its inhabitancy is to be ascertained in the same way as its citizenship, and such is the expressed opinion of the only supreme court decisions bearing upon the p . *Ex parte Schollenberger,* 96 U. S. 377; *Railroad Co.* v. *Koontz,* 104 U. S. 11. * * * To sustain any action in this district plaintiff must show that the defendant's legal habitation is here. This he cannot do unless the rule for ascertaining the citizenship and residence of corporations laid down by the supreme court in the cases cited is departed from." 37 Fed. Rep. 66.

By referring to the *Schollenberger Case* it will be seen that the supreme court waive a decision of the question touching the inhabitancy of the corporation. At page 375 the court expressly say:

"It is unnecessary to inquire whether these several companies were inhabitants of the district. The requirements of the law, for all the purposes of this case, are satisfied if they were found there at the time of the commencement of the suits."

In *Railroad Co.* v. *Koontz* the question was one of citizenship, and the point ruled, by the court of appeals of Virginia, was, that the company was a corporation of that state, and therefore not entitled to remove the suit to the circuit court. This ruling was reversed by the supreme court of the United States, and it was there held that the company was a Maryland corporation, and for the purposes of jurisdiction a citizen of that state, and, hence, that the suit was removable. If the language of the court be taken in connection with the facts of the case and the question presented, it is apparent that nothing more was, or intended to be, determined than to define and fix the citizenship of the railroad company for jurisdictional purposes. Mr. Chief Justice WAITE, delivering the opinion of the court, says:

"A corporation may for the purposes of suit be said to be born where by law it is created and organized, and to reside where by or under the authority of its charter its principal office is. A corporation, therefore, created by and organized under the laws of a particular state, and having its principal office there, is, under the constitution and laws, for the purpose of suing and being sued, a citizen of that state, possessing all the rights, and having all the powers, its charter confers. It cannot migrate nor change its residence without the consent, express or implied, of its state; but it may transact business wherever its charter allows, unless prohibited by local laws. Such has been for a long time the settled doctrine of this court. 'It must dwell in the place of its creation, and cannot migrate to another sovereignty.'" 104 U. S. 12.

It appears to my mind that by the use of the word "migrate," the same employed by Mr. Chief Justice TANEY in *Bank* v. *Earle*, 13 Pet. 588, 599, the court simply intended to convey the idea that it was incompetent for a corporation to change its *status* of citizenship, as fixed by the state of its creation, without the consent lawfully given of proper state authority. And the same may be said of the *Francis Case*, which, in essential respects, is quite similar to the *Case of Koontz*. In that, the question was one of citizenship, arising upon a petition to remove the suit to the circuit court. The removing party was a New York corporation, but an effort was made to remove the suit by virtue of corporate citizenship in Mississippi. The court say, in denying its right to remove:

"The declaration avers that the plaintiff in error (the defendant in the court below) is a corporation created by an act of the legislature of the state of New York, located in Aberdeen, Miss., and doing business there under the laws of the state. This, in legal effect, is an averment that the defendant was a citizen of New York, because a corporation can have no legal existence outside of the sovereignty by which it was created. Its place of residence is there, and can be nowhere else. Unlike a natural person, it cannot change its domicile at will; and although it may be permitted to transact business where its charter does not operate, it cannot on that account acquire a residence

there.  As, therefore, the declaration is on its face bad in not showing that one of the parties to the suit was a citizen of Mississippi, it follows that the transfer of the cause was not authorized by law."   11 Wall. 216.

It will be observed that the exact question in the case was whether the corporation was a citizen, not resident, of Mississippi, for the fact of residence was entirely immaterial, as citizenship, not residence, confers jurisdiction upon the circuit courts.

The settlement of a disputed question by the supreme court should always find ready acquiescence on the part of the inferior courts; and, in this instance, the court would cheerfully yield to superior authority if that authority had decided the point at issue.  "But," employing the language of Judge SAWYER in treating of another controverted question, "I cannot, after a full consideration of the case, satisfy myself that the supreme court designed the decision to be so far-reaching in its effects." *Holmes* v. *Railroad Co.*, 9 Fed. Rep. 242.   The precise point involved here was not passed upon by the supreme court in any of the cases to which reference has been made, and although some of the general language employed by the court, considered by itself, lends partial sanction to the view urged by counsel, still the rule is recognized that "the language of a judicial opinion must be considered with reference to the case decided," (Id. 243;) and, thus considered, it is perfectly clear the supreme court has not decided that a corporation, owing its corporate existence to the laws of a single state, may not, for jurisdictional purposes, be an inhabitant of a state other than that of its creation.

The decisions, it is well to remark, upon which counsel rely, treat of foreign corporations, and reference will now be made to a different line of authorities, where the rule is applied as to domestic corporate bodies. Thus it is said by Judge BLATCHFORD, in *Truck Co.* v. *Railroad Co.*:

"Although this suit is one not of a local nature,—that is, is what, if it were a suit at law, would be a transitory action,—yet the act has no application to a case where a single defendant resides as fully in all the districts in the state as in any one of them.  A corporation, if it can be properly said to 'reside' at all, resides in all the districts of the state creating it."   10 Blatchf. 307.

The supreme court of New York say:

"It is only upon the notion that the corporation might be treated as an inhabitant of Washington county that he (the justice) could entertain jurisdiction at all.  In my judgment a railroad corporation, whose road passes through two or more counties, may be sued before a justice in either county, provided the process can be served on the proper officer in such county.  A railroad company must be treated as an inhabitant and freeholder in each county where its track is laid."   *Sherwood* v. *Railroad Co.*, 15 Barb. 652.

In *Bristol* v. *Railroad Co.* the supreme court of Illinois apply a similar rule as to the residence of a corporation:

"The residence of a corporation—if it can be said to have a residence—is necessarily where it exercises corporate functions.  It dwells in the place where its business is done.  It is located where its franchises are exercised. It is present where it is engaged in the prosecution of the corporate enterprise. This corporation has a legal residence in any county in which it operates the road, or exercises corporate powers and privileges.  In legal contemplation,

it resides in the counties through which its road passes, and in which it transacts its business." 15 Ill. 437.

The rule is thus stated by the supreme court of Missouri:

"There can be no doubt that, within the limits of the state which grants the charter, a corporation may have a special constructive residence in more places than one, so as to be charged with taxes and dues, and be subjected to the local jurisdiction where its officers and agencies are actually present in the exercise of its franchises and in carrying on its business; and the legal residence of a corporation is not necessarily confined to the locality of its principal office or place of business. It depends on the official exhibition of legal and local existence, and its place of residence may be wherever its corporate business is done." *City of St. Louis* v. *Ferry Co.*, 40 Mo. 586, 587; citing *Glaize* v. *Railway Co.*, 1 Strob. 70; *Cromwell* v. *Insurance Co.*, 2 Rich. Law, 512.

The same court, in *Slavens* v. *Railroad Co.*, following the rule announced in the foregoing case, use the language:

"It seems to me upon a fair construction of the statute that a corporation is a resident of the county through which its line of road passes, and in which it has an agent upon whom process can be served, and where suits are authorized to be commenced. It is true, upon this question there have been contradictory decisions." 51 Mo. 309.

At page 310 the court refer to *Baldwin* v. *Railroad Co.*, 5 Iowa, 518, and *Richardson* v. *Railway Co.*, 8 Iowa, 260, as having followed and affirmed the doctrine. *Railroad Co.* v. *Cooper,*. 30 Vt. 476, and *Thorn* v. *Railroad Co.*, 26 N. J. Law, 121, 124, seem to hold a different rule, either directly or inferentially. The exact points decided by those cases, however, may be easily ascertained by referring to the decisions themselves.

There is no fixed meaning attached, by the laws of this state, to the term "residence" or "habitation" of a railway corporation. "Every railroad or other corporation, organized or doing business in this state under the laws or authority thereof, shall have and maintain a public office or place in this state for the transaction of its business, where transfers of stock shall be made," etc. Const. art. 10, § 3. And by statute it is declared, that "every railroad corporation shall have and maintain a public office at some place upon the line of its road in this state," (Rev. St. art. 4115;) and "the public office of a railroad corporation shall be considered the domicile of such corporation," (Id. art. 4120.) The public office may be changed "at pleasure" by publication of notice for a stipulated time. Id. art. 4118. While the laws do not provide that a railroad corporation may be a resident or inhabitant of any particular county, otherwise than by declaring the public office to be its domicile, it is, by statute, made suable "in any county through or into which the railroad of such corporation extends or is operated," (Rev. St. art. 1198, subd. 21,) and "citation may be served on the president, secretary, or treasurer of such company or association, (incorporated company or joint-stock association,) or upon the local agent representing such company or association in the county in which suit is brought, or by leaving a copy of the same at the principal office of the company during office hours," (Id. art. 1223.)

The road of defendant extends into and through this judicial district. It has local agents here, who transact its ordinary corporate business. It may be sued here under the laws of this state, and process is authorized to be served upon agents representing it here. The fact that it has its principal office in the Eastern district, and that, therefore, it is constructively an inhabitant thereof, should not exempt it from suit in this district. In my judgment the general spirit and intent of the law require the defendant, for jurisdictional purposes, to be an inhabitant of this district; and I hold that it must be so regarded within the meaning of the act of congress. The exceptions to the plea in abatement will therefore be sustained. It is a matter of regret that the amount in controversy is not sufficient to authorize a revision of the judgment by the supreme court, whose decision of the question is essential to the establishment of a fixed and uniform rule.