## WALKER, Sheriff, *v.* LEA.

*(Circuit Court, N. D. Mississippi, W. D.* September 30, 1891.)

UNITED STATES MARSHALS — DEPUTIES — POWERS OUTSIDE DISTRICT — CARRYING CONCEALED WEAPONS — HABEAS CORPUS.

The authority and powers of United States marshals and their deputies are confined to the districts for which they are appointed; and hence, where a deputy-marshal for the western district of Tennessee, while temporarily in Mississippi on private business, learns of the whereabouts of a person for whom he has a warrant of arrest, and thereupon conceals a pistol about his person preparatory to starting in pursuit, he is answerable to the Mississippi courts for the offense of carrying concealed weapons, and *habeas corpus* will not issue to effect his release. Rev. St. U. S. 788, providing that "marshals and their deputies shall have, in each state, the same powers in executing the laws of the United States as the sheriffs and their deputies in such state may have, by law, in executing the laws thereof," refers only to the districts for which the marshals are appointed.

At Law. Application for writ of *habeas corpus.* On appeal from the decision of the district judge.

*Sullivan & Whitfield,* for the State of Mississippi.

*M. A. Montgomery,* Asst. Dist. Atty., for relator.

Before LAMAR, Justice, and HILL, J.

LAMAR, Justice. This was an application for a writ of *habeas corpus*, addressed to the district judge by Clem Lea, a deputy United States marshal for the western district of Tennessee, and a citizen of that state, alleging that he was unjustly and unlawfully deprived of his personal liberty, by being imprisoned in the county jail of Alcorn county, Miss., at Corinth, by J. P. Walker, sheriff of that county, for the non-payment of a certain fine and costs assessed against him by the circuit court of said Alcorn county, on the charge of carrying concealed weapons, contrary to the laws of the state of Mississippi. The facts in connection with his arrest, fine, and imprisonment were set out somewhat in detail, and it was averred that

petitioner had not violated any law of the state of Mississippi, and should not have been arrested, fined, and imprisoned, because, at the time of such arrest, fine, and imprisonment, he was a deputy United States marshal for the western district of Tennessee, and was lawfully engaged in the performance of his duty as such officer, and had therefore the right to carry the weapon for the carrying of which he had been arrested. Upon the filing of this petition, the district judge issued the writ prayed for, returnable to himself, at chambers, at Oxford, Miss., and, in obedience to its commands, the sheriff of Alcorn county made his return, stating that he held the petitioner in custody by virtue of a writ of *capias pro finem* issued by the clerk of the circuit court of said county directed to him as sheriff, which writ was produced and made a part of his return. The relator then filed a reply or traverse to the return, admitting the truth thereof, but setting out, with much detail, by way of justification of the offense charged against him, all the facts and circumstance connected with his official character in the transaction, and relating to his arrest, fine, and imprisonment, which, it was asserted, entitled him to the writ. The case was heard upon the pleadings and on the proofs offered, and on arguments of counsel; and the judgment of the district judge was that the relator should be released and discharged from said imprisonment. From that judgment the sheriff, through his counsel, prosecuted this appeal.

The material facts of this controversy, as shown by the evidence adduced at the hearing before the district judge, so far as necessary to a correct understanding of the questions in the case, are substantially as follows: On Saturday, the 20th day of December, 1890, the relator, who was at that time a legally appointed and qualified deputy United States marshal for the western district of Tennessee, was in Corinth, Miss., about three and one-half or four miles from the Tennessee line, (the boundary of his district.) There is some dispute as to his object in going to that place, but we think that the evidence shows that his primary object on that trip was in relation to business in no wise connected with this controversy. Corinth was his most convenient railroad station, his market town, and the place where he received the most of his mail. In the forenoon of that day he went to the post-office, and received a letter from a gentleman of Kenton, Tenn., a station on the Mobile & Ohio Railroad, about 100 miles north of Corinth, within his district, which was one in reply to one sent by his superior officer, the United States marshal of the western district of Tennessee, informing him that one Frank Bowers, who was wanted in his district for robbing the United States mails, was near that place. Having in his possession a warrant for the arrest of Bowers, he at once determined to set out from Corinth, on the first train north, to effect his capture. Knowing from past experiences that Bowers was a dangerous character, and being himself a stranger at Kenton, he went to the deputy-sheriff of Alcorn county, who resided at Corinth, and borrowed a pistol from him, at the same time arranging with that officer to retain for a while a pair of handcuffs which he had previously borrowed from him. He put the pistol in a scabbard,

and buckled it around his body, under his coat. A short time before the arrival of the north-bound train at Corinth relator met a Mr. Emmons, who informed him that Bowers was not at Kenton, Tenn., but was at a place in McNairy county, in that state. Thereupon relator immediately gave up the trip to Kenton, and made the necessary arrangements to travel on horseback to the place where Bowers was said to be, for the purpose of effecting his capture. While transacting some other incidental business, the pistol protruded from beneath his coat, and the mayor of Corinth, chancing to see it, ordered the marshal of the town to arrest the relator, and bring him forthwith for trial on the charge of carrying concealed weapons, contrary to the Mississippi law. The arrest was accordingly made. When arrested, the relator stated to the mayor that he was a deputy United States marshal for the western district of Tennessee, and claimed, therefore, that he had a right to carry a pistol in Mississippi. That officer, having some doubt as to his authority to fine him, under the circumstances, took the case under advisement, and allowed the relator to go his way, taking with him the pistol. Immediately thereafter the relator left Corinth, going in pursuit of Bowers. The direct route to the place where he had been informed Bowers was, took him within one-half mile of his home. Arriving at that point late on Saturday night, he turned aside, and stayed all night at his own home, and early Sunday morning set out again in quest of Bowers. Some time on Monday following he arrested Bowers, and forthwith took him before the United States commissioner to be dealt with according to law. Some two weeks afterwards, to-wit, January 23, 1891, while Lea was again in Corinth on business not connected with this controversy, he was again arrested by the marshal of that town, and taken before the mayor, on the same charge he had been previously arrested on, as aforesaid. The only defense set up by Lea was the same as before, viz., that he was a deputy United States marshal for the western district of Tennessee, and therefore had the right to carry a pistol in Mississippi, notwithstanding the statute forbidding the carrying of concealed weapons. The mayor of Corinth overruled this defense, and imposed a fine of $25 and costs upon him. An appeal was thereupon taken to the circuit court of Alcorn county, Miss., where, at the next term of court, the case was tried before the court and a jury. The defenses offered in that court were (1) that he was a deputy United States marshal for the western district of Tennessee; and (2) that he was going on a journey,—either or both of which defenses, it was claimed, was sufficient to take the case out of the penal provisions of the Mississippi statute. These defenses were overruled by the court, and, a verdict of guilty having been returned by the jury, that court imposed a fine of $50 and the costs of both trials. Failing and refusing to pay such fine and costs, Lea was sent to jail, and he subsequently made an application for this writ of *habeas corpus*, as already stated.

The material questions in this case are embraced in a very narrow compass. This court is not sitting in review upon the judgment of the circuit court of Alcorn county on the question of the sufficiency of the

relator's defenses under the Mississippi statutes.    Undoubtedly the United States courts possess the right to issue the great writ of *habeas corpus.*    But the power to exert by this writ their jurisdiction over the judgments of the state courts, in criminal cases, extends no further than to look into the record to see whether the particular case is *coram judice* or not.    If it was, then, whatever may be the ground on which the judgment is assailed, it amounts to error only, which this court cannot reach by *habeas corpus.*

The statute upon which the prosecution of the state court was founded is as follows, (Rev. Code Miss. 1880, c. 77:)

"An act in relation to crimes and misdemeanors.— Carrying concealed weapons.   Sec. 2985. Any person not being threatened with, or having a good and sufficient reason to apprehend, an attack, or traveling, not being a tramp, or setting out on a journey, or a peace-officer, or deputy in the discharge of his duties, who carries concealed, in whole or in part, any bowie-knife, pistol, brass or metallic knuckles, slung-shot, or other deadly weapon of like kind or description, shall be deemed guilty of a misdemeanor, and on conviction shall be punished by fine not exceeding one hundred dollars, and, in the event the fine and cost are not paid, shall be required to work at hard labor, under the direction of the board of supervisors or of the court, not exceeding two months; and for the second or any subsequent offense shall, on conviction, be fined not less than fifty nor more than two hundred dollars, and, if the fine and cost are not paid, be condemned to hard labor, not exceeding six months, as above provided; and, in any proceeding under this section, it shall not be necessary for the state to allege or prove any of the exceptions herein contained, but the burden of proving such exception shall be on the accused."

That this statute of Mississippi is constitutional, as a legitimate exercise of the inherent police power of the state, has not been questioned in the argument; and that the construction put upon it by the state courts, as to what acts shall be deemed a violation of it, must be accepted in the United States courts, is equally well settled.    The authority of this court to proceed in this *habeas corpus* proceeding is derived from section 753 of the Revised Statutes of the United States.    That section, so far as material, reads as follows:

"The writ of *habeas corpus* shall in no case extend to a prisoner in jail, unless where he is in custody under or by color of the authority of the United States, or is committed for trial before some court thereof; or is in custody for an act done or omitted in pursuance of a law of the United States, or an order, process, or decree of a court or judge thereof; or is in custody in violation of the constitution or of a law or treaty of the United States."

It is claimed by the relator, and the learned district judge so decided, that the facts of this case bring it within the remedial provisions of this section of the statutes.    Concisely stated, the argument is that, as the relator, at the time of his arrest, was a deputy United States marshal, and was in the act of starting in the pursuit of a criminal for whose arrest he had a warrant in his possession, he was therefore engaged in the performance of an act enjoined upon him by the constitution and laws of the United States, and had a right to carry a pistol, for the carrying of which he was arrested; and that it is immaterial that the acts which are

claimed to have been done in pursuance of the laws of the United States were done and performed outside of the limits of the district for which the relator had been appointed, and was serving as a deputy-marshal. This argument is ingenious, but it is unsound. It overlooks the vital principle running through our laws (and which is in fact admitted by the relator in another form) that, subject to certain well-defined exceptions, (not material to be stated here,) the authority of the United States marshals and their deputies to act in an official capacity is confined to the repective districts for which they have been appointed. Rev. St. § 787; *Fletcher* v. *U. S.*, 45 Fed. Rep. 213, 214. In this case the relator was a deputy United States marshal for the western district of Tennessee, and the warrant which he had for the arrest of Bowers had been issued by a United States commissioner for that district. No part of his district extended into Mississippi. The warrant was effective only in the western district of Tennessee. *Toland* v. *Sprague*, 12 Pet. 300; *Ex parte Graham*, 3 Wash. C. C. 456, 4 Wash. C. C. 211; *Day* v. *Manufacturing Co.*, 1 Blatchf. 628. Moreover, the official character of the relator could be recognized only in that district. Outside of that district, except in certain special cases not material in this consideration, he was simply a private citizen, and, as such, was amenable to the laws of the place where he chanced to be. He could not serve the warrant outside of his own district, and his official authority could be recognized only in that district. If he could not do the main act connected with the service of the warrant without his district, neither could he perform, outside of his district, such incidental preliminary acts as are claimed in this case to have been done in the line of his duty, and therefore in pursuance of the law.

Much reliance, however, is placed on section 788 of the Revised Statutes. That section provides as follows:

"The marshals and their deputies shall have, in each state, the same powers in executing the laws of the United States, as the sheriffs and their deputies in such state may have, by law, in executing the laws thereof."

The argument in this connection is that as, in the performance of their duty, the sheriffs and their deputies in Mississippi have a right to carry a pistol, therefore the relator, as a deputy United States marshal for the western district of Tennessee, being in Mississippi, should have the same right. That conclusion is a *non sequitur.* That section of the statute will not warrant such a construction. It was never intended by that section to enlarge the territorial jurisdiction of the United States marshals and their deputies, which is the logical effect of the construction contended for. That section must be read and construed *in pari materia* with section 787. When so read, it means simply that the marshals and their deputies, *within their respective districts*, shall have, in each state, the same powers in executing the laws of the United States, as the sheriffs and their deputies in such states may have, by law, in executing the laws thereof. It would greatly protract this opinion, and would subserve no useful purpose, to review the many authorities cited and commented upon by counsel, both in their oral arguments and their

briefs since filed. It is sufficient to say that none of them, it is believed, are directly in point; but, so far as they are applicable to the facts herein, their principles have been embodied in this opinion.

This may be considered a hard case, in some particulars, on the relator, who evidently had no intention of violating the laws of the state of Mississippi in arming himself with a pistol; but that consideration touches the merits of the defense in the state court, rather than its jurisdiction, and cannot influence this court in *habeas corpus* proceedings.

For the foregoing reasons the judgment of the district judge is reversed, with directions to take such further proceedings as shall be in accordance with law, and not inconsistent with this opinion. Let an order be entered accordingly.